UNITED STATES *v.* PITTSBURGH & WEST VIRGINIA RAILWAY COMPANY ET AL.

PITTSBURGH & WEST VIRGINIA RAILWAY COMPANY ET AL. *v.* UNITED STATES.

APPEALS FROM THE COURT OF CLAIMS.

Nos. 864, 865. Argued March 11, 1926.—Decided May 24, 1926.

1. Under § 1 of the Federal Control Act, and § 6 of the standard form of contracts made pursuant thereto between the Director General of railways and railroads taken over by the Government, whereby the Director General was either to pay out of the revenues derived from railway operations "during the period of federal control," or save the company harmless from, all taxes lawfully assessed under federal or other governmental authority "for any part of said period," except "war taxes" assessed against the company under the Revenue Act of 1917 or any Act in addition thereto or amendment thereof, the obligation of the Director General to bear the normal income taxes of a railroad corporation was limited to those "assessed for the period of federal control," and did not extend to income taxes under the Revenue Act of 1921, assessed for the year 1921, on income received by the company in that year (after termination of federal control) from the Director General in compensation for the use of its properties during federal control. P. 312.

2. The divisions of income taxes prescribed by Revenue Act of 1918, § 230(b), between the Director General of Railroads and railroad companies did not apply to income taxes imposed by Revenue Act of 1921, and the latter prescribed no such divisions. *Id.*
61 Ct. Cls. 11, reversed.

CROSS APPEALS from a judgment of the Court of Claims in a suit to recover money collected from the plaintiff railway companies as income tax.

*Solicitor General Mitchell,* with whom *Mr. A. A. Mc-Laughlin* was on the brief, for the United States.

*Mr. Harvey D. Jacob,* with whom *Mr. Frank M. Swacker* was on the brief, for the Pittsburgh & West Virginia Railway Company et al.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The United States appeals from a judgment in favor of plaintiffs for $21,295.62, being two per cent. tax on their consolidated income for 1921. Plaintiffs have taken a cross appeal, and insist that the court erred in failing to add their expenses and attorneys' fees.

The Pittsburgh Company owned all the capital stock. of the West Side Company. Their railroads were taken over by the President and were operated under federal control from January 1, 1918, to March 1, 1920. They failed to make any agreement with the Railroad Administration as to just compensation to be paid them for the use of their properties until final settlement was made July 1, 1921. At that time there was paid to plaintiffs $1,570,000 in addition to $250,000 which had been paid on account in January, 1920. And the Director General assumed, in respect of the payment of taxes, the obligations which are specified in § 6 of the standard form contract authorized by the Federal Control Act, March 21, 1918, § 1, c. 25, 40 Stat. 451.

Plaintiffs made returns and paid the full amount of federal taxes for 1918 and 1919 respectively. These included nothing received as compensation for the use of their properties. The Director General reimbursed them to the extent of the normal taxes. Plaintiffs made their return and paid their taxes for 1920. Their income in that year included the $250,000 paid on account. As federal control ended March 1, the Director General declined to allow more than one-sixth of the tax. The plaintiffs' taxable net income for 1921 was $1,064,781.39. This, because of deductions allowed, was less than the payment at final settlement. In 1923, upon plaintiffs' insistence, the Bureau of Internal Revenue held that the compensation re-. ceived in 1921 for the use of their properties during federal control was income for that year, and that none of it was attributable to the period of federal control. Subsequently, plaintiffs called on the Railroad Administration for payment of $21,295.62, two per cent. of their income.

The question for decision is whether plaintiffs' income tax for 1921 was " assessed for the period of Federal control" within the meaning of the Federal Control Act and the authorized standard contract.

Section 1 of the Federal Control Act required that every such agreement should provide that federal taxes under the Revenue Act of 1917, or Acts in addition thereto or in amendment thereof, commonly called war taxes, " assessed for the period of Federal control beginning January first, nineteen hundred and eighteen, or any part of such period" should be paid by the carrier out of its own funds or should be charged against or deducted from the just compensation; that other taxes assessed " for the period of Federal control or any part thereof," should be paid out of revenues derived from operations while under federal control.

The authorized standard form of contract, § 6 (a), provided that all war taxes assessed against the company

under the Revenue Act of 1917 or any Act in addition thereto or in amendment thereof should be paid by the company. And paragraph (c) provided that the Director General should either pay out of revenues derived from railway operations " during the period of Federal control " or save the company harmless from all taxes lawfully assessed under federal or other governmental authority " for any part of said period " except the taxes and assessments for which provision was made in paragraph (a).

The tax of two per cent. imposed by § 10 of the Revenue Act of 1916 was known as the normal tax. The additional tax of four per cent. imposed by § 4 of the Revenue Act of 1917 was a war tax. Section 230 (a) of the Revenue Act of 1918 provided that, in lieu of the two per cent. normal tax and the four per cent. war tax, there should be paid for the calendar year 1918 a tax of 12 per cent. of net incomes and for each year thereafter 10 per cent. Section 230 (b) provided that, for the purpose of the Federal Control Act, five-sixths of the 12 per cent. tax and four-fifths of the 10 per cent. tax should be " treated as levied by an Act in amendment of Title I of the Revenue Act of 1917." Thus, it was plainly indicated that the tax to be borne by the Director General was the two per cent. The amount in controversy is two per cent. of the income tax for 1921. It was assessed under the Revenue Act of that year which provided that, in lieu of taxes imposed by the Act of 1918, there should be paid 10 per cent. of net incomes for 1921 and 12½ per cent. for each year thereafter. The divisions between the Director General and the corporation, prescribed by subdivision (b) of § 230 of the Act of 1918 applied only to taxes imposed by subdivision (a) of that section. No divisions were prescribed by the Act of 1921. Those made by the earlier Act were not intended to apply to taxes imposed by the Act of 1921, and neither of them would produce the two per cent. normal tax if applied to 12½ per cent., the rate for each year after 1921.

The provisions of § 6 of the standard form of contract, the Federal Control Act and the Revenue Acts are to be read together. When this is done, it is clear that the obligation of the Director General to bear the normal income taxes of the corporations did not go beyond those assessed for the period of federal control. That obligation was not held down to the normal tax on amounts received as compensation for the use of their properties, but extended to the normal tax assessed for that period on all incomes taxed without regard to source. But it cannot be held to extend to taxes on incomes for 1921 without excluding from consideration the provisions of the Federal Control Act and standard agreement clearly limiting the obligation to taxes assessed for the period of federal control. The meaning of these provisions is plain. There is no room for construction. The period in which the assessments were made governed. The sources of taxable incomes were not regarded. It would be contrary to the plain language of the statute and contract to hold the United States liable for any part of the taxes for 1921. Plaintiffs were not entitled to recover.

Their cross appeal depends upon a provision contained in § 6 of the standard contract binding the Director General to pay or save the company harmless from expense of suits respecting the classes of taxes payable by the Director General under the agreement. As the tax was not so payable, plaintiffs take nothing by their cross appeal.

*Judgment reversed.*

Mr. Justice Brandeis took no part in the consideration or decision of this case.