**ACHTIEN v. DOWD, Warden.**

No. 7412.

Circuit Court of Appeals, Seventh Circuit.

Feb. 19, 1941.

Oscar B. Thiel and Frank A. Rondinelli, both of Gary, Ind., for appellant.

James K. Northam, Deputy Atty. Gen., of Indianapolis, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Petitioner's appeal is from an order of the United States District Court for the Northern District of Indiana, denying his petition for a writ of habeas corpus.

Petitioner is incarcerated in the Indiana State Prison at Michigan City, Indiana, pursuant to a state court judgment based upon conviction on indictments charging him with being an accessory before and after the fact to murder and to burglary. Another count, charging him with conspiracy, was also included.

After conviction on the above-designated charges, on January 4, 1936, he was committed to the state penitentiary for life. At the time of his indictments he was a citizen of Illinois and was twenty years of age. He informed the court that he was without funds, and an attorney was appointed to defend him. He alleges that the appointment of this attorney, one of the negro race, and allegedly inexperienced, constituted a denial of his constitutional right to be represented by competent counsel. Avery v. Alabama, 308 U.S. 444, 60 S. Ct. 321, 84 L.Ed. 377. He also charges that his counsel erroneously informed him that he could not seek a change of venue, but could have a change of judge, and he so petitioned the court. A practicing attorney (provided for by Indiana statute) was appointed, as special judge, to sit and hear his case.

Petitioner pleaded not guilty. His attorney, allegedly without his consent, presented a stipulation of facts; no trial was had nor witnesses heard. He asserted that because of the inexperience of his counsel no appeal was taken within the time provided by statute for taking an appeal.

Petitioner invokes the jurisdiction of the Federal court, because of the lapse of time for appeal in the Indiana court, and because his only redress is in the Federal court, due to the fact that the Supreme Court of the State of Indiana has so curtailed the remedy of habeas corpus that on a state of facts such as above stated, a petition for habeas corpus by him addressed to the Supreme Court of Indiana, would be denied. Its prosecution would be a futile proceeding. Haden v. Dowd, Ind.Sup., 23 N.E.2d 676, 677. He sought no relief in the Indiana State Court through habeas corpus proceedings.

The Indiana statute, Burns Ind.Stats. Ann., 1933, § 3-1901, reads:

"Every person restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into

the cause of the restraint, and shall be delivered therefrom when illegal."

In the case of Haden v. Dowd, supra (Supreme Court of Indiana, 1939), the petitioner therein sought to be discharged through habeas corpus proceedings, on several grounds, one of them being that "he was not represented by counsel, and was not sufficiently advised of his constitutional right to have counsel; that 'he did not intelligently waive his right to be represented by counsel and did not intelligently enter plea of guilty.'"

The Indiana Supreme Court there held the Indiana Circuit Court had no jurisdiction to entertain the petition for habeas corpus, unless the state court which entered the judgment in the criminal case had no jurisdiction to hear the case. Since it was evident the criminal court had jurisdiction, there was, under the Indiana rulings, no remedy by habeas corpus in the state court for violation of constitutional rights, such as representation by competent counsel. The Supreme Court of Indiana was cognizant of the fact that the Federal Statute might be broader than their state statute, but denied relief. The court said:

"The Superior Court * * * has general jurisdiction to try criminal cases within that county. * * * The Superior Court had jurisdiction to construe the statute and the law, and determine what judgment could be and should be entered against him. It had power and jurisdiction to decide whether he desired counsel, and whether he waived the right to counsel with a full understanding of his constitutional rights. It has often been said that jurisdiction to decide involves the power to decide wrong or erroneously. Since the Superior Court * * * acquired jurisdiction of the defendant's case and of him, no other state court of general jurisdiction can wrest from that court jurisdiction to decide questions arising in that case, and no other state court of general jurisdiction has jurisdiction to pass upon and determine whether the Superior Court * * * acted erroneously or abused its judicial discretion. * * * We are concerned only with the jurisdiction of the Circuit Court * * * to decide whether or not the Superior Court * * * was guilty of error or abuse of discretion. That it has no such jurisdiction has been repeatedly decided by this court. * * *

"The appellant relies upon Johnson v. Zerbst, Warden, 1938, 304 U.S. 458, 58 S.

Ct. 1019, 82 L.Ed. 1461, in which it is held that one federal district court has power to investigate the manner in which another federal court of equal jurisdiction has conducted the trial of a criminal case, and if there was an abuse of discretion in respect to furnishing counsel for the defendant, or if it is believed that the defendant had not intelligently and competently waived the right to counsel, the applicant might be discharged upon the theory that the judgment of the court in which the conviction was had is void for want of jurisdiction. * * * this court has noted that jurisdiction of the federal courts to entertain petitions for habeas corpus has been broadened by statute. This court has not been unmindful of the constitutional provisions, both state and federal, insuring the advice of counsel to a defendant in a criminal case. * * * But we are not here concerned with constitutional rights. Where constitutional rights are invaded or denied by courts of general jurisdiction, there are well-known remedies provided. The sole question with which we are concerned here is one of jurisdiction.

"Assuming that the trial court erred in the sentence as charged, and that the defendant's right to have counsel was not adequately protected, the remedy does not lie within the jurisdiction of the Circuit Court * * *. The Act of Congress broadening the jurisdiction of federal courts with respect to habeas corpus does not affect in any way the jurisdiction of our courts of general jurisdiction."

The question raised by this appeal necessitates its division into two narrower inquiries: (a) The determination of the reviewable facts bearing upon the accused's constitutional right to have competent counsel represent him when charged with a serious felony. (b) The permissible scope of review, of a state court sentence, by an "inferior Federal court" in a habeas corpus proceeding.

The first inquiry necessitates the separation of reviewable from non-reviewable facts.

(a) Release from the imprisonment which is here sought is based, inter alia, upon the alleged constitutional right to be represented by competent counsel, as recognized in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; and Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461.

As petitioner was represented by counsel, our inquiry is narrowed to the necessity of, and the presence of, competent counsel in this case. The specific ·objections to the counsel's competency are that he was colored, and he lacked experience, being young and without a background of extensive trial work.

We assume that a court appointing counsel for one charged with a felony should take many things into consideration. He should consider the existence or, absence of friends, the age and the experience of accused, the seriousness of the charge, and the statements of counsel which tend to inform him of the existence of factual disputes, etc., particularly on the question of criminal intent.

■ It would seem tolerably clear, that an accused is entitled, if he desires counsel, not only to be represented by one admitted to the bar, but to be represented by competent counsel,—by a capable practitioner.

■ The fact that one is admitted to practice law in the state where the crime was committed is not, of itself, sufficient, if incompetency be charged and proven. Doubtless admission to practice, and the presence of counsel's name on the roll of attorneys in the court where the accused is to be tried, create a presumption of competency. The presumption, however, is rebuttable, not conclusive. A fact issue is raised. Who is to determine the issue? On what evidence? To what extent is the trial court's action reviewable? These are questions which the petition presents. Unfortunately, the record before us is incomplete, due to the fact that the District Court dismissed the petition before respondent had time to file an answer. No evidence was received. We have, however, been favored with an oral statement made at the time of argument, over which there was apparently no dispute, which clarifies the fact allegations of the petition.

■ The criticism herein made that due process was denied·because counsel, appointed by the court, was a negro, is untenable. It is legal competency, not social status, distinction or qualification, that counts and controls. Good sense and good judgment necessitate the trial judge's weighing these matters in making a selection, to-wit, age of counsel, color of counsel, if that question be present, position, standing at the bar, especially if counsel's reputation be bad, or is known as questionable. When the selection is made, it must be given respect, and proof strong enough to support a finding of abuse of discretion presented, before a reviewing court in a habeas corpus proceeding will grant relief.

The fact that petitioner's counsel was colored, in a county where the great majority of citizens (and foreigners) were white (400 lawyers were white, and only five were negroes) should not have prejudiced petitioner. It did not prejudice the state judge.. It does not prejudice us. We must assume in this case that the state judge, before whom the accused was brought, was as anxious, as we, to see that this youth of twenty, who had participated in a robbery and a murder, was given a fair, trial and also given a punishment which was just and proper—a question, we might add, so serious and difficult that only the ignorant and the intolerant would pronounce judgment with a self-sufficient certitude which bespeaks a failure to appreciate responsibility.

Fortunately, too, the offense was tried in the State of Indiana, and no suggestion is, or can fairly be, made that this community is so prejudiced against the negro that a white man charged with commission of a felony, represented by a negro as his attorney, could not get a fair trial, even though it appeared that the appointment of such counsel was by the court. ·To reach any other conclusion would be to reflect on the intelligence and fairness of· a community in this circuit and assume a factual situation which is. at variance with our judicial knowledge and information.

This leaves the youthfulness and inexperience of counsel to sustain the charge of incompetency. Here, again, we enter a field where the boundary lines, which separate the aces from the deuces, which distinguish between the brilliant lawyer who dazzles but does not illumine courts and the stolid, plodding counsel who knows his objective and pursues it, are not particularly distinct. There is a rather well-defined recollection on the part of the court, backed by our observations, that all lawyers must have their first cases, that in said first case diligence and anxious effort are often quite the equivalent of experience. It is also observable that counsel with much experience often have co-pending matters of importance which necessitate the division of time and attention, whereas the young counsel is unvexed and unperplexed by other matters and questions, and not

bothered by more profitable and insistent clients. He may, therefore, give to his client full, valuable and vigorous service, which will compare favorably with that which his more experienced and better established brethren of the Bar render.

And this observation is strengthened when we assume, what our experience and observation have taught us to be sound, namely, that the facts are not of the making of counsel and that the facts do and should determine most criminal cases, despite the efforts and skill of counsel, whether able and experienced, or young and new in trial work.

Experience accumulated over the years is productive of wisdom—generally. The enthusiasm and drive of youth are helpful aids in the trial of hard cases—generally. But, always, the inexorable, unyielding, convicting facts overcome the wisdom of experience or the irresistible enthusiasm of youth.

The petition and oral statement here justify the statement that petitioner and two other young men stopped outside a filling station for the purpose of holding up and robbing the owner thereof; that the criminal conspiracy was executed; that the owner of the station refused or declined to be held up and was shot dead; that the petitioner, though he remained in the car while his two associates executed the plan, —that is, held up the proprietor and shot him—participated as an accessory before and after the fact.

Now, obviously, it would take a lot of experience of counsel and superior knowledge of the law to extract from the facts just described, the prejudice which a court or a jury would naturally draw therefrom. In other words, the facts overwhelm the situation, and no skill or experience of counsel could avoid or overcome the righteous indignation which would arise from the recital of such a cold-blooded, brutal murder.

In fact, it is not the legitimate province of counsel who represent the accused to encourage perjury or subornation of perjury, or to tolerate it. The duty of faithful, capable counsel representing accused, when appointed by the court, is not different and carries no lesser obligation than would be the case if counsel were privately employed to represent the accused. Our experience has included cases where able counsel, appointed by the court to represent indigent persons accused of crime, out of an overly keen sense of duty and responsibility, have taken appeals without merit. In many cases where judgments have been entered, and privately employed counsel represent the defendant, no appeals have been taken because no prejudicial error was committed. This is as it should be. Like considerations should govern counsel in taking appeals where he is appointed by the court.

The complaint is made that the counsel appointed by the court was unfamiliar with Supreme Court practice and never had a case in the Indiana Supreme Court. In passing, it might be observed that petitioner's counsel has not suggested any ground for appeal (save incompetent counsel) to which might be added, that it is not the number of appeals which counsel may have taken, but how he handled the appeals which he has taken, that counts. Surely, taking an appeal, just for experience or practice, without knowing what error to assign or whether the assignment is meritorious, is not commendable practice.

In the last analysis, counsel for accused should not overlook the fact that he has a duty to society, as well as the accused, to perform. When the cold, undisputed, and inexplainable facts point with certainty to the commission of a felony by his client, it is not part of counsel's duty, whether employed by the accused or appointed by the court, to undertake to overthrow the facts by false and perjured testimony or by practices which it has been here intimated are within the knowledge of experienced counsel but outside the ken of the beginner.

This case impresses us as one where the real question was not of guilt of petitioner, but rather one where the punishment was the debatable question.

There is an allegation in the petition which is somewhat outside the charge of incompetency of counsel, which would necessitate the issuance of the writ were it not for the jurisdictional question, hereafter discussed.

The petitioner alleged in substance that he pleaded not guilty to the charge set forth in the indictments, that thereafter, without his knowledge and consent, his counsel consented to an agreed statement of facts, which facts established petitioner's guilt.

We, of course, do not know what fact might be established on the trial respecting this allegation, for the respondent has not

answered and no evidence was received. In the absence of dispute, either by answer or by evidence, we must accept this allegation as true. On this assumption, we must hold that the court could not have validly pronounced sentence upon petitioner on such a record. Accused's counsel had no authority to change his plea nor to stipulate facts without his consent. To hold otherwise would constitute a denial of several rights guaranteed the accused by the Bill of Rights.

The proper course for the court, to whom the petition for habeas corpus is addressed, to pursue, is stated in the recently decided case of Walker v. Johnston, 61 S. Ct. 574, 85 L.Ed. ——, announced by the Supreme Court, February 10, 1941. That practice calls for an examination of the petition to ascertain its legal sufficiency. If a factual allegation is there asserted which would justify the issuance of the writ, the writ should issue and be directed to the person in whose custody the prisoner is detained. Such officer must make a return, and if a factual issue is presented, the cause shall be set for early hearing and a trial, including the taking of oral testimony.

Before a hearing is necessitated, however, or the writ issues, the court must determine whether "it appears from the petition itself that the party is not entitled thereto." The District Court, in the instant application, undoubtedly following this requirement, concluded that the petition on its face showed, as a matter of law, that the petitioner was not entitled to the writ.

We conclude that the above considered allegations of fact would necessitate the issuance of a writ in this case' but for the objection which involves the discussion of the second question stated in the forepart of this opinion, namely, the decisions which restrict "inferior Federal courts" from unnecessarily and improperly interfering with the judgments of state courts even where the guaranties of the Federal Constitution are, allegedly, violated.

This brings us squarely to the consideration of said second question, to-wit, of the permissible scope of review of the state court sentence by an inferior Federal court, in a habeas corpus proceeding.

(b) The petition has failed to show a fact situation which would justify a Federal inferior court in a habeas corpus proceeding, in reviewing and avoiding a state court sentence, where the ground for relief is the alleged violation of a right given the accused by the Fourteenth Amendment to the Federal Constitution.

The law seems to be well established (Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Beal v. Missouri Pac. R. R. Corp., 61 S.Ct. 418, 85 L.Ed. ——, decided January 20, 1941; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406) that, save in exceptional cases, petitioner must show he has exhausted his efforts to obtain the desired relief in the state court.

In Fenner v. Boykin [271 U.S. 240, 46 S. Ct. 493, 70 L.Ed. 927], the court said:

"Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714, 13 L.R.A. (N.S.) 932, 14 Ann.Cas. 764, and following cases have established the doctrine that, when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection. The Judicial Code provides ample opportunity for ultimate review here in respect of federal questions. An intolerable condition would arise, if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court. Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402."

In Mooney v. Holohan [294 U.S. 103, 55 S.Ct. 343, 79 L.Ed. 791, 98 A.L.R. 406], the court said:

"We do not find that petitioner has applied to the state court for a writ of habeas corpus upon the grounds stated in his petition here. That corrective judicial process has not been invoked, and it is not shown to be unavailable. * * * Orderly proce-

dure, governed by principles we have repeatedly announced, requires that before this Court is asked to issue a writ of habeas corpus, in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the state may still remain open * * *"

In the instant case it is asserted that it would be futile and useless to apply to the State Court of Indiana for a writ of habeas corpus because the Supreme Court of that state has recently announced the conditions under which it will grant. habeas corpus. Petitioner's case does not fall within such necessary requirements, so he alleges.

Regardless of the belief of counsel as to the action which the Indiana Supreme Court may take, upon the presentation to it, of a petition for habeas corpus, it was his duty in view of the decision of the United States Supreme Court in Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406, to first apply to the state court for such a writ. Failure of the petition to show the taking of such action in the state court renders the petition under consideration insufficient.

Even though such be the belief of the petitioner and his counsel, it does not necessarily follow that the Supreme Court of Indiana will not change its holding in the light of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Walker v. Johnston, supra. See also the persuasive and compelling opinion in Smith v. O'Grady, 61 S.Ct. 572, 85 L.Ed. ——, decided February 17, 1941. Even if it refused to change its views, petitioner would be in a position to apply directly to the Supreme Court for redress. As stated in the Fenner case,

"The Judicial Code provides ample opportunity for ultimate review here [in the Supreme Court] in respect of federal questions."

This course seems to us to be the orderly procedure and must be followed, rather than to invoke a controversy between the state court and the Federal court, upon a state court judgment and thus possibly create an intolerable condition which would permit one charged with violation of state law, avoiding a trial thereof, or the execution of a sentence thereafter imposed,

through a petition to a Federal court in an original proceeding, to-wit, a habeas corpus proceeding.

The above decisions recognize an exception, to-wit, "extraordinary circumstances." Said exceptions are, however, limited to instances where the danger of irreparable loss is both great and immediate. We are sure that this was the reason for the District Court's dismissing the petition. Convinced that there was no extraordinary case presented where the danger of irreparable loss was both great and immediate, the District Court rightly denied the petition.

The order of the District Court is affirmed.