**L. C. WILSON, alias "Pat" Wilson,**
**Petitioner,**

v.

**UNITED STATES of America,**
**Respondent.**

**Civ. A. 997.**

United States District Court
W. D. Virginia,
Abingdon Division.
March 26, 1963.

MICHIE, District Judge.

L. C. Wilson, a prisoner in the Federal Penitentiary in Atlanta, has filed a "motion for plenary hearing" which concludes with the request that the court determine why the petitioner should not be discharged forthwith from further illegal imprisonment and may be construed either as a petition for a writ of habeas corpus or a motion under 28 U.S. C. § 2255. He had been charged with kidnapping a Mr. and Mrs. Dickens and with raping Mrs. Dickens.

Mr. Wilson's first point is "whether the official transcript shows that the petitioner was in fact denied counsel of his own choosing in a capital case because of his poverty". This is in a sense true and in a sense is true in every case in which court-appointed counsel defends a person accused of crime. The record shows that the petitioner was asked whether he had counsel of his own and when he replied in the negative he was asked if he wished to have counsel appointed and he replied in the affirmative.

When first arrested Mr. Wilson had tried to employ a Mr. Ralph Brumet. However he found that he could not raise the money to pay the fee that Mr. Brumet demanded. So when Mr. Wilson asked the court to appoint counsel for him the court appointed Mr. Brumet and also Mr. James R. Moore, a former Assistant United States Attorney.

These attorneys advised the accused to plead guilty. It appears that they had somewhat of an argument with him but he was finally persuaded to follow his attorneys' advice and did plead guilty. However he was not immediately sentenced as the probation report was not then available. Some days later, when the probation report became available, the prisoner was brought back into court and then stated that he wished to change his plea from guilty to not guilty, explaining that he had been coerced into making the plea of guilty by his counsel against his own wishes. Counsel of course denied that the accused had been coerced but did state that they had very strongly recommended a plea of guilty and that he had finally agreed to it. Nevertheless the court permitted him to change his plea and, as he indicated he was quite dissatisfied with the counsel who had been appointed for him (though one of them was his own original choice whom he would have employed if he could have raised the money), the court thereupon appointed new counsel to defend the accused. These gentlemen were Senator Fred C. Parks of Abingdon and Mr. H. E. Widener, Jr. of Bristol.

In the course of a discussion with the court as to who should be appointed, the defendant remarked, "What about this Mr. Campbell up in Wytheville? I have heard a lot of him." And the court replied, "Well, Mr. Campbell lives in Wytheville, but that is several counties from Abingdon."

Messrs. Parks and Widener came to the same conclusion that the first lawyers had, namely, that it was to the

best interest of the accused to plead guilty. And they too succeeded in persuading him to do so. And the court then, after hearing evidence in the case, sentenced the prisoner to twenty years on the charge of kidnapping and raping Mrs. Dickens, and ten years, to be served concurrently with the first sentence, on the charge of kidnapping Mr. Dickens.

The only basis for the petitioner's argument that he was denied counsel of his own choosing is the colloquy above quoted in regard to Mr. Campbell of Wytheville. There is no indication in the record that the petitioner ever mentioned anyone else. It is perfectly clear that he did not have the money to employ Mr. Campbell or anyone else. There is nothing in the record to indicate that at the time the prisoner was dissatisfied with the appointment of Senator Parks and Mr. Widener to represent him and it is hardly conceivable that he could have been.

It is plain therefore that there is nothing to petitioner's first point.

Petitioner's second point is thus stated by him:

"Whether the official transcript shows that this petitioner's choice of counsel was coerced by the court and United States Attorney because of his poverty?"

What has already been said pretty well covers this question. The record amply shows that if the prisoner had had the funds he could have employed any counsel that he chose. Not being able to do so he had to rely on court-appointed counsel. When I first read the question I rather assumed that it would have been so universally conceded that a prisoner did not have the right to tell the court who the court should appoint to represent him that I did not expect to find any authority on the point. However the question does appear to have been raised at least once—in United States ex rel. Mitchell v. Thompson, D.C., 56 F. Supp. 683. In an opinion in that case by Judge Rifkind of the District Court of the Southern District of New York, it is said at p. 688:

"* * * I have always believed the law to be that the choice of counsel for indigent persons accused of crime was the court's and not the defendant's. Otherwise, pre-eminence at the bar would be the surest road to bankruptcy. In making the assignment the court concerns itself with the qualification of the appointee to perform the task; that includes when necessary the avoidance of conflicting duties on part of the attorney. The court is also concerned to avoid imposing too many burdens on any one lawyer. It has been my understanding that the courts need have no concern with the private predilections of the defendant for a lawyer of a specified color (Achtien v. Dowd, supra [7 Cir., 117 F.2d 989]), or sex or age or political affiliation; and that the defendant may not name the lawyer whom the court must appoint.

"To confer upon every indigent defendant the power of 'senatorial courtesy' with respect to the court's appointee would, in my judgment, lead only to reluctance on the part of attorneys to accept appointments in unpopular causes, for in effect the appointment would then come by grace of the accused and not of the court. I, therefore, do not propose to follow such a rule until an appellate court commands me to do otherwise."

I thoroughly concur in Judge Rifkind's opinion.

Petitioner's third ground is thus stated:

"Whether the official transcript shows that the United States Attorney caused the alleged victim to state under oath that she was kidnapped when in fact she was not?"

I have read the entire transcript and it shows no such thing.

Petitioner's fourth question is thus stated:

"Whether the official transcript shows that the court and United States Attorney knowingly deprived the petitioner of a prompt arraingment as required by Rules 10 and 11 of the Federal Rules of Criminal Procedure; they deprived the petitioner of his right to enter any plea; and, they failed to hand petitioner a copy of the *e*ndictment as required before pleading—under Rule 10 of Title 18, F.R.C.P.?"

The record shows that the matter first came before the court on May 16, 1960. At that time the defendant was not arraigned because he was trying to employ counsel and the matter went over until May 27th. At that time counsel were appointed for him, as indicated above, one of them being the attorney that the defendant had intended to employ if he could have raised the money to pay him. Shortly thereafter the defendant was arraigned and entered a plea of guilty. And certainly the petitioner was not deprived of the right to enter any plea. He was persuaded by two sets of counsel to enter a plea of guilty and did so. And immediately after the arraignment the District Attorney stated, "Your honor, for the record, a copy of the indictment has been delivered to counsel and to the defendant." Furthermore at that time counsel stated that they had previously conferred with the defendant as to the nature of the indictment and the penalty that might be involved. It is clear therefore that there is no merit in petitioner's fourth point.

Petitioner's final question is:

"Whether the official transcript shows that the petitioner's constitutional rights were severely violated in that all proceedings therein were a farce and a mockery of justice, in that he was not guilty of a kidnapping charge."

What has already been said would seem to be a sufficient refutation of this charge. But it might be added that the evidence heard by the court clearly proved the defendant's guilt.

█ At the very conclusion of the prisoner's argument in support of his motion he raises another question, i. e., whether he was "deprived of his right to make a statement as required under Rule 32(a)" of the Federal Rules of Criminal Procedure.

The record shows the following at the conclusion of the hearing of the evidence:

"THE COURT: The defendant does not wish to make a statement?

"MR. PARKS: No, sir."

In Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670, the court asked the question at the conclusion of the trial, "Did you want to say something?" and thereupon the defendant's counsel spoke at some length. It could not be ascertained from the record whether the court was looking at the prisoner or the prisoner's counsel when he used the somewhat ambiguous term "you" but the court held that the record did not definitely show that the prisoner had been denied the right of allocution. This case is quite similar but with the difference that the form of question here, irrespective of whom the court was looking at, clearly apprised the defendant of his right to make a statement and Mr. Parks certainly would not have answered as he did if he had not then consulted the prisoner or, perhaps, previously discussed the matter with him. And the record here shows throughout that Mr. Wilson had no hesitation about speaking out and discussing matters with the court when the spirit moved him. Therefore there appears to be no merit in this point which at the most could only result in a resentencing of the prisoner after giving him further opportunity to make a statement. See also McGrady v. Cunningham (4th Cir., 1961), 296 F.2d 600.

The prisoner's motion will be denied and an order will be entered accordingly.