**Junior Glaten THACKER**

v.

**A. E. SLAYTON, Jr., Superintendent of the Virginia State Penitentiary.**

**Civ. A. No. 494–71–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

May 20, 1974.

---

Evans B. Brassfield, Richmond, Va., for plaintiff.

William A. Carter, III, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendant.

### MEMORANDUM

MERHIGE, District Judge.

Petitioner, a Virginia prisoner, seeks federal habeas corpus relief from a state conviction for first degree murder. Jurisdiction is attained pursuant to 28 U. S.C. § 2254.

The petition formally presents three grounds on which relief is requested:

1. That the state trial judge wrongfully refused to relieve petitioner's appointed counsel upon petitioner's request and grant petitioner a continuance of the criminal proceedings so that he might employ counsel of his choice.

2. That the state trial judge wrongfully refused to stay the petitioner's state criminal action pending a decision by the Court of Appeals for the Fourth Circuit on an appeal from a federal District Court decision denying petitioner's request to have his appointed counsel in his state criminal action ordered relieved.

3. That petitioner's state criminal prosecution, leading to the conviction challenged herein, constituted double jeopardy in that the petitioner had previously been tried and convicted on that charge, but had been granted federal habeas corpus relief, by this Court, from the prior conviction.

The facts relevant to the petitioner's first and second claim are the following:

On March 19, 1970, the state trial court appointed counsel to represent the petitioner with respect to the criminal charges pending against him. The counsel appointed was one who had unsuccessfully represented the petitioner in his appeal to the Virginia Supreme Court from his prior conviction. Said appeal had, of course, preceded the grant of federal habeas corpus relief.

Apparently lacking confidence in his appointed counsel, petitioner claims to have begun immediately after said appointment to look for an attorney of his own choosing and to arrange financing for the hiring of same.

The record reflects that petitioner's dissatisfaction with his appointed counsel was, in fact, communicated to the state trial judge almost two months prior to trial. In a hearing on April 1, 1970, petitioner's appointed counsel informed the Court that petitioner had requested him to withdraw from the case. Commonwealth v. Thacker, Tr. at pp. 36–37. The trial judge disallowed petitioner's request, stating that he considered petitioner's appointed counsel to be a highly competent criminal attorney; and noting further his opinion that an indigent defendant has no right to appointed counsel of his choosing, but only to competent counsel.

On April 28, 1970, petitioner submitted to this Court a petition seeking a writ of mandamus ordering the state trial court to discharge petitioner's appointed counsel in his state criminal proceedings. In an order entered on May 12, 1970, this Court filed the petition for writ of mandamus in forma pauperis and summarily dismissed same, on jurisdictional grounds. Thacker v. Hustings Court, Petersburg, Va., C.A. No. 778–70–R, mem. decis., May 12, 1970 (E.D. Va.). The order dismissing that petition was subsequently appealed by the petitioner, and affirmed by the Court of Appeals for this Circuit on July 8, 1970. Thacker v. Hustings Court, Petersburg, Va., No. 14,689.

On May 26, 1970, the date of trial, petitioner came forward to inform the state trial judge in his criminal proceeding that he had made tentative arrangements for retained counsel, whom he expected to come into the case that afternoon. Commonwealth v. Thacker, Tr. at pp. 66–67. The petitioner further informed the trial judge that the attorney he expected to retain had been unable to appear in court that morning because of another trial he had pending in a distant city. Tr. at p. 67. The petitioner frankly conceded that arrangements had

not been finalized for the retention of said attorney. Tr. at p. 67.

While the record does not reflect that the petitioner made a formal request for a continuance to allow time to make final arrangements for the retention of private counsel and to allow time for said counsel to prepare the case, such a request can fairly be inferred from petitioner's statements. Tr. pp. 66–67. The state trial judge, nevertheless, allowed the case to proceed to trial.

The petitioner did make a formal motion that his trial be continued until such time as the Court of Appeals ruled on petitioner's then pending appeal from this Court's order dismissing his petition for writ of mandamus. Tr. at pp. 76–77, 84–85. The motion for continuance on that basis was denied. Tr. pp. 77, 85.

At trial, the petitioner was convicted of murder in the first degree, and sentenced to 99 years in the state penitentiary.

With respect to the petitioner's first claim, the Court would note that in support thereof, the petitioner has alluded to a claimed conflict of interests between himself and his appointed attorney in the state criminal proceedings. More specifically, the petitioner has alleged that his appointed defense counsel was the brother-in-law of his prosecuting attorney. The petitioner further alleges that said relationship is reflected in the transcript of his criminal proceedings, so that it should have been known to the state trial judge. These allegations are made in a document drafted by the petitioner himself and attached to a brief submitted by his appointed counsel in this action on November 19, 1973.

The Court has grave doubt as to whether the relationship alleged, assuming it did in fact exist and was known to the trial judge, would necessarily amount to a conflict of interests such as to require a substitution of counsel. However, the Court does not consider the matter ripe for final determination at this time.

First, it is not apparent to the Court that the factual basis on which the petitioner relies has been properly brought before the Virginia Supreme Court so as to fulfill the exhaustion of state remedies requirement of 28 U.S.C. § 2254(b). See Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Second, contrary to petitioner's suggestion, the Court is unable to find in the transcript of his state criminal proceedings any reference to the alleged relationship. Quite possibly the petitioner is totally mistaken that the alleged relationship even exists.

Understandably, the respondent has not addressed the various issues involved in this aspect of the petitioner's claim, as it was not raised in the original petition, nor was it formally set out in any of the papers drafted by petitioner's appointed counsel in this action. Therefore, rather than proceed immediately to a hearing to resolve those issues, the respondent will be given fifteen days in which to address the matter in brief, by affidavit or otherwise. The remainder of the discussion herein proceeds on the assumption that any claim based on the alleged relationship between petitioner's defense attorney and his prosecuting attorney is not properly before the Court at this time.

Beyond the matters previously discussed, the principles governing petitioner's first claim were recently enunciated in United States v. Inman, 483 F.2d 738 (4th Cir. 1973). The Court of Appeals for this Circuit stated therein, at 483 F.2d 739–740:

The Sixth Amendment right to counsel includes not only an indigent's right to have the government appoint an attorney to represent him, but also the right of any accused, if he can provide counsel for himself by his own resources or through the aid of his family or friends, to be represented by an attorney of his own choosing. Included also is the right of any defendant to a reasonable opportunity to obtain counsel of his own choosing. Crooker v. California, 357 U.S. 433,

439, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932); United States v. Pigford, 461 F.2d 648, 649 (4th Cir. 1972).

The Court in *Inman,* proceeded to point out, however, that trial courts have a coordinate right to control their own dockets to require that cases proceed in an orderly and timely fashion. *Id.,* 483 F.2d 740. To that end, trial courts have the discretion to deny motions for continuances where it is deemed that sufficient grounds have not been shown to support said motions. *Id.,* 483 F.2d 740.

With respect to the conflicts that may sometimes arise between the right to retain counsel of one's own choosing and the trial court's right to proceed with a trial, the Court in *Inman,* at 483 F.2d 740, quoted from an earlier Supreme Court opinion:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel . . . Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality . . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

Under the facts of this case, the Court cannot conclude that the state trial judge abused his discretion in this regard, so as to amount to a denial of due process.

It is true that the petitioner had expressed dissatisfaction with his appointed counsel very early in the criminal proceedings against him, and some two months prior to trial. This is apparently in contrast to the appellant's situation in United States v. Inman, *supra,* 483 F.2d 738, 740. See also, Lam v. Peyton, 268 F.Supp. 253, 254 (E.D.Va.1967). However, similar to the situation in United States v. Inman, *supra,* it was not until the date of trial that the petitioner was able to demonstrate to the state trial court that he had made even tentative arrangements for the employment of a privately retained attorney. In the meantime, the state trial judge had specifically considered petitioner's dissatisfaction with his court appointed counsel and had concluded that said counsel was fully competent to represent the petitioner.

Therefore, placing matters in their proper perspective, the Court arrives at the following conclusions.

First, having concluded that petitioner's court appointed counsel was fully competent to represent the petitioner, the state trial court was clearly not obligated to discharge said attorney and make a new appointment simply because the petitioner himself would have preferred another attorney to represent him. See United States v. Jones, 369 F.2d 217, 220 (7th Cir. 1966); United States v. Burkeen, 355 F.2d 241 (6th Cir. 1966), cert. den. Matlock v. United States, 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); Davis v. Stevens, 326 F.Supp. 1182 (S.D.N.Y.1971). Absent the ability to retain counsel through his own resources, a criminal defendant does not have the absolute right to tell the court who it should or should not appoint to represent him. *Id.* See also, Wilson v. United States, 215 F.Supp. 661 (W.D.Va.1961). Absent a specific and substantial reason for objecting to a particular attorney, it is sufficient that the Court appoint competent counsel to represent an indigent defendant.

Second, there is no indication that the petitioner's dissatisfaction with his appointed counsel ever reached the point

that he would have preferred, as the only alternative, to waive his right to counsel and represent himself. At least the record does not reflect that petitioner ever communicated such intent to his state trial judge. See Brown v. United States, 105 U.S.App.D.C. 77, 264 F.2d 363 (1959).

Third, it may be that an indigent criminal defendant, finding dissatisfaction with his court appointed counsel, should be given a reasonable opportunity to seek financial aid through family and friends and to enlist the services of privately retained counsel. See United States v. Inman, *supra*, 483 F.2d 739–740; United States v. Pigford, 461 F.2d 648 (4th Cir. 1972). However, it cannot be said that petitioner was denied such opportunity in this case.

A period of two weeks elapsed between the court appointment of counsel, on March 19, 1970, and the court appearance, on April 1, 1970, wherein the petitioner first expressed dissatisfaction with his appointed counsel. Another week elapsed before petitioner's next appearance in court, on April 8, 1970. A period of over two months elapsed between the initial court appointment, on March 19, 1970, and the date on which the case was ultimately tried, May 26, 1970. Suffice it to say that the petitioner had more than ample opportunity over this two month period to make whatever arrangements he could for the employment of privately retained counsel. On the other hand, the state trial court could not be expected to have stayed further proceedings in the matter *indefinitely*, until such arrangements had actually been made, if at all.

■ Also, in this regard, it cannot be said that the state trial judge did anything to chill petitioner's right to make arrangements for the employment of a privately retained attorney. At no time prior to trial did the judge indicate that

he would be unwilling to allow the substitution of privately retained counsel should petitioner have proved able to obtain the services of same. The trial judge merely refused to relieve appointed counsel under circumstances wherein the petitioner had not indicated that alternate arrangements had been made.

■ Finally, coming forward, as he did, for the first time on the date of trial with, at best, a tentative arrangement for the substitution of privately retained counsel, petitioner had no reason to expect that a continuance would be granted to facilitate the substitution. While it may have been within the discretion of the state trial judge to grant such continuance, his refusal to do so was clearly not an abuse of discretion, so as to amount to a denial of due process. United States v. Inman, *supra*, 483 F.2d 740. See also, United States v. Sexton, 473 F.2d 512 (5th Cir. 1973). The situation would have been vastly different, of course, had the petitioner come forward with said arrangement at some reasonable date prior to trial. See United States v. Inman, *supra*, 483 F.2d 738, at 740 where the court pointed out that a similar ruling extended to the outermost reach of the trial court's discretion.

■ As to petitioner's second claim, the Court is aware of no authority which requires a state trial court to stay further proceedings in a criminal prosecution pending the outcome of related federal litigation absent a federal order effectively mandating the same. In this case, there was no such order. By the date on which petitioner's criminal trial was held, this Court had already dismissed, on jurisdictional grounds, his request for a writ of mandamus; and the Court of Appeals had taken no action on his appeal from that dismissal. Petitioner had neither requested, nor had he been granted, interim relief pending the appeal.[1]

---

1. The Court does not mean to suggest that such interim relief would necessarily have been proper. Indeed, the circumstances in which a federal court will interfere in any

way with an ongoing state criminal prosecution are extremely limited. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Ex parte Royall, 117 U.S. 241,

Beyond that, the Court would point out that the petitioner was in no way prejudiced by the state court's decision to proceed with his trial, the pending appeal on his federal mandamus claim notwithstanding. As previously noted, the Court of Appeals ultimately affirmed this Court's dismissal of that claim on jurisdictional grounds. In addition, the decision herein, as to the petitioner's first claim, establishes that there was, likewise, no substantive merit in his earlier mandamus claim.

Pushed to the wall, the petitioner, personally, suggests that even assuming his federal mandamus claim was totally lacking in merit, which it was, he had a right to use the pending appeal in that action as a delaying tactic to gain time in which to make arrangements for the substitution of privately retained counsel in his pending state criminal proceeding. Suffice it to say that no such right attached; and this argument, in which petitioner's appointed counsel in this action has wisely refrained from participating, represents only the petitioner's twisted notion of justice.

■ Petitioner's third claim of double jeopardy is clearly without merit. In response thereto, the Court points out that when a criminal defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events. See United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 15 L.Ed.2d 627 (1965); United States v. Ball, 163 U.S. 662, 671–672, 16 S.Ct. 1192, 41 L.Ed. 300 ( 1896). The same rule applies whether the prior conviction was reversed on appeal or the subject of a successful collateral attack. See United States v. Tateo, 377 U.S. 463, 465–

468, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (federal prisoner having obtained collateral relief under 28 U.S.C. § 2255). See also, Mitchell v. Youell, 130 F.2d 880 (4th Cir. 1942) and United States ex rel. Almeida v. Rundle, 383 F. 2d 421 (3d Cir. 1967), cert. den., 393 U. S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131 (1968) (state prisoners having obtained federal habeas corpus relief).

The decision in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 28 L.Ed.2d 707 (1969), on which the petitioner relies, does not even remotely suggest a different result. The petitioner in *Benton* had originally attained an *acquittal* on the charge to which it was claimed jeopardy had previously attached, said acquittal having been attained in spite of procedural defects with respect to the original indictment. In *Benton*, the state sought to reindict the petitioner on the charge for which he had previously been acquitted, as well as a companion charge for which his conviction had been reversed based on the faulty indictment. What the petitioner here fails to note is that in *Benton* there was no question but that the state had the right to re-indict and re-try the petitioner on the companion charge for which he had previously been convicted. Conversely, it was only the charge on which the petitioner in *Benton* had been acquitted that was held barred by double jeopardy.

For the reasons stated, the Court considers that summary judgment should enter for the respondent, except as to that aspect of petitioner's claims regarding the alleged relationship between his appointed defense counsel and his prosecuting attorney.

An appropriate order shall enter.

---

6 S.Ct. 734, 29 L.Ed. 868 (1886). Moreover, the Court has grave doubt as to whether the petitioner would have been able to make out a case of irreparable injury, such as would have justified interim relief pending his appeal. Even assuming he had prevailed on that appeal, federal relief in the nature of habeas corpus would probably have been available to rectify his intervening state criminal conviction. Finally, petitioner's mandamus claim was so lacking of a jurisdictional base, that interim relief would probably not have been justified in any case. See Gurley v. Superior Court of Mecklenburg County, 411 F.2d 586 (4th Cir. 1969).