THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GILBERTO DIAZ, Defendant-Appellant.

(No. 72-299;

Second District—November 16, 1973.

Ralph Ruebner, Deputy Defender, of Elgin (Adam Lutynski, Assistant Appellate Defender, of counsel), for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Edward Morris, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Pursuant to a negotiated plea of guilty the defendant was convicted of Voluntary Manslaughter (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(b)), and sentenced to 6—12 years in the penitentiary. He appeals, contending that he was not informed of the nature of the charge. A motion for summary modification of sentence has been taken with the case.

Defendant was initially tried on a two-count indictment charging Murder (Count I) and Voluntary Manslaughter (Count II). A mistrial was declared on September 24, 1971, when the jury was unable to reach a verdict. Thereafter, on November 29, 1971, a plea agreement was accepted by the court. Defendant pled guilty and Count I was dismissed. The hearing in aggravation and mitigation was waived, and defendant sentenced in accordance with the agreement.

Before accepting the plea the court first recalled that there was a language problem and inquired about arrangements for an interpreter. The public defender stated that a senior at Rockford College who was a citizen of Puerto Rico and spoke fluent English and Spanish was in court. The court then stated:

> "THE COURT: * * * You are satisfied are you, that she can inform Mr. Diaz of everything that is said in Court?
>
> MR. VELLA: Completely, Your Honor."

The court further inquired about members of defendant's family and was informed by defense counsel that defendant's wife, his sister-in-law and a friend were present, all of whom spoke both English and Spanish. The following colloquy then appears in the record:

> "THE COURT: Count II charges that on May 23, 1971, Mr. Diaz committed voluntary manslaughter by shooting and killing Juan Tomyo with a gun. Do you understand the nature of that charge?
>
> THE INTERPRETER: Yes."

The court then informed the defendant of the minimum and maximum penalties and proceeded to inform itself of the details of the plea agreement.

After an off-the-record discussion, the prosecutor stated to the court on the record that the defendant had indicated to him that the second count of voluntary manslaughter had been struck by the court in the instruction conference in the previous trial of the case and that a jury instruction on voluntary manslaughter was given which changed the language of Count II from voluntary manslaughter,

> "* * * with regard to sudden and intense passion resulting from serious provocation to voluntary manslaughter with regard to the committing of said act when the defendant, at the time of the killing, believed the circumstances to be such that if they existed would justify or exonerate the killing."

The colloquy continued:

> "THE COURT: Unreasonable self-defense.
>
> MR. GEMIGNANI: That is correct.
>
> THE COURT: Is that your memory, Mr. Vella?
>
> MR. VELLA: Yes, it is, Your Honor.
>
> THE COURT: That is my memory also, and that is how that charge was submitted to the jury on voluntary manslaughter in Count II of the Indictment."

The prosecutor in reporting the agreement to the court stated:

> "* * * [W]e have at this time agreed, subject to the Court's approval, that the defendant would plead guilty to Count II as given in the jury instructions at the time of the trial—voluntary manslaughter, unreasonable self-defense * * *."

Defendant's attorney confirmed to the court that he, the State's Attorney and the defendant had reached this agreement. He stated that approximately two weeks before he had gone with the interpreter who was now in court and discussed the agreement with the defendant, told him what the negotiations were, and that defendant agreed to them; that approximately a week later he talked to the defendant together with the same interpreter and with the defendant's brother and at that time "everyone agreed, and especially the defendant".

The court then, directly addressing the defendant, told him that it had been informed of the agreement whereby defendant would enter a plea of guilty to voluntary manslaughter and the court would impose a sentence of not less than six years nor more than twelve years and would dismiss the murder charge in the indictment. The court concluded by asking:

> "Is this a correct statement of the agreement as you understand it to be?"

To which the defendant through the interpreter answered yes. Defendant's attorney then stated that he had discussed the agreement with defendant on three different occasions with other people present and that he was satisfied that the defendant understood the agreement as the court stated it.

The court was then informed of the facts of the shooting and further admonished the defendant under Supreme Court Rule 402. In response to the court's inquiry to the defendant if he had any questions, the defendant, through the interpreter, stated:

> "THE INTERPRETER: He says that he didn't know the laws of this country when he did commit the crime, because in his country if someone defends himself from someone that was constantly beating him up and kept doing this that he would have had a right and would have come out better, but that he is very sorry for what happened, and that he didn't know the law."

Defendant's counsel stated that he had prepared a jury waiver written in Spanish which had been read to the defendant through the interpreter that day prior to defendant's coming to court. The interpreter stated defendant said he understood what was read to him. The court took a short recess to allow defendant to look over the waiver. Defendant then signed it in open court and acknowledged that it was his free and voluntary act. The document, which consists of only one paragraph, includes the statement:

> "It has been explained to me the charge of voluntary manslaughter pertains to a person who intentionally and knowingly kills an individual if at the time of the crime he believed that the circumstances were such that his very existence is in danger and would justify or exonerate the killing, but his belief is wrongful."

The entire waiver document was read into the record in open court by the interpreter, in English.

■■ Relying on *People v. Ingeneri* (1972), 7 Ill.App.3d 809, 811, defendant argues that when informing a defendant of the nature of the charge, the court must clearly and simply state each material element of the offense in sufficient detail to insure the defendant's ability to understand. We do not agree that either Supreme Court Rule 402 or any constitutional provision requires each element of an offense be explained to a defendant. Rather, in our view, the record as a whole should disclose that the defendant has been advised of the "essence, general character, kind or sort" of the offense to the extent that the particular defendant before the court deciding on the options available to him has a common understanding of the nature of the charge. *People v. Hickman* (1973), 9 Ill.App.3d 39, 42; *People v. Carter* (1969), 107 Ill.App.2d 474; *People v. Harden* (1966), 78 Ill.App.2d 431, 444 (adopted by reference

in *People v. Harden* (1967), 38 Ill.2d 559, 563); *People v. Ratliff* (1973), 11 Ill.App.3d 274.

■■ It may be fairly inferred from the statements in the record before us that everything which appears in the transcript of the proceedings of the plea acceptance was translated and communicated to the defendant through the interpreter. (See *People v. Martinez* (1972), 7 Ill.App.3d 1075.) From this record, we conclude that defendant was informed of the nature of the charge in substantial compliance with Supreme Court Rule 402 and that defendant's understanding was established.

■ It would have been better practice and technical compliance with the rule for the judge to have informed the defendant personally and directly of the unreasonable self-defense aspect of the voluntary manslaughter charge. The necessary information and the defendant's understanding were established by the whole record, however, which included the State's Attorney's colloquy with the court in the presence of the defendant and interpreted to him, the statement of the plea agreement, the paraphrasing of the indictment, defendant's response that he understood the nature of the charge, and defendant's own statement about his lack of knowledge of the law in regard to defending himself at the time he committed the act. See *People v. Trinka* (1973), 10 Ill.App. 3d 183, 185.

■■ The record also shows that an uncomplicated waiver was written in Spanish and read to the defendant just prior to the open-court proceedings, that his counsel and the interpreter advised the court that defendant told them he understood it, and that defendant himself in open court both acknowledged he understood the document and signed it before it was read into the record (although by the interpreter in English). Although we have held that a written waiver form may not substitute for the required admonishments (*People v. Cummings* (1972), 7 Ill.App.3d 306), when the substance of the form and defendant's open-court responses to it have been thoroughly aired on the record as here, this court is further assured that the defendant was informed of and understood the nature of the charge.

■■ Defendant has moved for summary modification of the minimum sentence to one year or in the alternative to not more than four years on the basis of section 5—8—1(c) (3) of the Unified Code of Corrections now in effect. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c) (3).) The State concedes only that the minimum sentence is inappropriate because it exceeds one third of the maximum, since voluntary manslaughter now constitutes a Class 2 felony. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 9—2(c).) Under these circumstances we conclude that the provisions of the Unified Code of Corrections require the case to be

remanded to the trial court for sentencing. *People v. Pickett* (1973), 54 Ill.2d 280, 284-285.

The judgment of conviction under the negotiated plea is affirmed and the cause is remanded to the circuit court for sentencing pursuant to the provisions of the Unified Code of Corrections.

*Affirmed and remanded, with directions.*

GUILD, P. J., and T. MORAN, J., concur.