THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN JAMES GRATTON, JR., Defendant-Appellant.

(No. 73-99; ▇▇▇▇▇▇▇▇)

Second District—May 17, 1974.

William L. Balsley, of Loves Park, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Thomas Sullivan, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

On July 15, 1972, the defendant in the company of Ricky Cook and Gary Newman drove to the "Minit-Mart" in Rockford. Defendant entered the store, made a few purchases, and presented a payroll check of the AXA Construction Company in the sum of $128 to the daughter of the proprietor. She advised the defendant that she would have to wait for her father, William W. Rader, to approve the check. Shortly thereafter Mr. Rader came to the store and asked the defendant for identification. The defendant represented himself as Charles Lane, the payee on the check. Defendant signed the check as Charles Lane in the store but did not have any identification. When Mr. Rader went out to the car for the purpose of checking the license number he recognized the driver of the car as Ricky Cook whom he had known for 10 to 12 years. The check was then cashed in the store.

Later, the proprietor called the AXA Construction Company and discovered that a number of payroll checks had been stolen from that company. He reported the license number and description of the man to the sheriff as well as the name of Ricky Cook, one of the two co-defendants. The proprietor further testified that in addition to the "Minit-Mart" grocery store he was the owner of two taverns and that the defendant was not intoxicated although dressed in work clothes.

Later that day, the three defendants were apprehended in the Lou Backrodt Chevrolet parking lot by the county sheriff's department. The arresting officer looked into the car and saw a brown paper bag on the floor containing 27 payroll checks all made out to Charles Lane. The checks were dated the 14th of July, 1972, and were in varying amounts of approximately $130. They were identical with the one cashed by the defendant at the "Minit-Mart" grocery. The defendant was taken to the Winnebago sheriff's office where another check was found in his wallet similar to the ones found in his car and to the one that was cashed.

During the various motions at the time of defendant's plea and in his application for probation the defendant admitted that he cashed the forged check in the "Minit-Mart" grocery store but stated that he was intoxicated, and that he found the bag full of checks in an alley.

The defendant, upon a plea of guilty, was sentenced on Count I of the indictment to the penitentiary for a period of 2-6 years. In this appeal counsel for the defendant has raised three issues: (1) the plea of guilty was accepted without substantial compliance with the provisions of Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, sec. 402); (2) defendant was denied right to have counsel other than the public defender; and (3) the sentence was excessive.

We turn first to the acceptance of the plea of guilty by the court under

the provisions of Rule 402. Examination of the record discloses that at the time the defendant withdrew his plea of not guilty the court explained in detail the rights that the defendant was waiving before accepting his plea of guilty. As a matter of fact, the transcript discloses 15 pages wherein the court admonished the defendant of the consequence of his plea of guilty. Defendant contends that the court did not advise him of the possible penalty. Upon two separate occasions the court advised the defendant of the possible penalty that might be imposed, to-wit: 1-14 years in the penitentiary.

Defendant further contends that he did not understand the nature of the charge. As the court stated in *People v. Hudson* (1972), 7 Ill.App.3d 800, 288 N.E.2d 533, there is some confusion in the distinction between the factual basis for the plea and the determination that the accused understands the nature of the charge under the provisions of Supreme Court Rule 402. Of necessity, many times the two may overlap. In the instant case the defendant was supplied with a copy of the indictment charging him with forgery. At the time he sought to withdraw his plea of not guilty, the court stated to the defendant: "You are charged with Count I of this Indictment, forgery, writing a check to one William Rader * * *. This was a check they say was forged, a forged check drawn on the Stillman Valley National Bank by one James E. Banks and in fact was forged, now do you understand that?" The defendant replied in the affirmative. The State's Attorney then stated the factual basis of the plea and the nature thereof to the court in the presence of the defendant and his counsel, "Mr. Gratton went into the store with an AXA Construction Company check drawn on Stillman Valley National Bank of Stillman Valley, Illinois, in the amount of $128 which was forged and made payable to Charles Lane, a non-existent individual. The name of the person on the check was James E. Banks and he also was non existent * * *." From our examination of the whole record we are satisfied that without a doubt the defendant knew the nature of the charge and the facts surrounding his cashing of the forged check. We find that there was substantial compliance with the provisions of Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, sec. 402). Counsel for defendant has cited *People v. Ingeneri* (1972), 7 Ill.App.3d 809, 288 N.E.2d 550, relative to the explanation by the court of the nature of the charge required under Rule 402. We do not disagree with that court's statement of the requirement that the court state to the defendant the nature of the charge in language that the defendant can understand. Under the facts in the case before us we find that the defendant well understood the nature of the offense with which he was charged and to which he desired to plead guilty. See *People v. Diaz* (1973), 15

Ill.App.3d 280, 304 N.E.2d 103; *People v. Hickman* (1973), 9 Ill.App.3d 39, 42, 291 N.E.2d 523; *People v. Harden* (1966), 78 Ill.App.2d 431, 444, 222 N.E.2d 693 (adopted by reference in *People v. Harden,* 38 Ill.2d 559, 563).

In the presence of the defendant, the State's Attorney described the offense in detail to the court and the defendant replied "Yes, everything he said, that's the way I remember it. Before accepting defendant's plea of guilty the trial judge advised the defendant in his lengthy discussion of his rights under Rule 402, that he had the right to a trial by jury; of the requirements that the State must prove him guilty beyond a reasonable doubt; of his right to have the case heard by a judge in the event he waived a jury; and that the judge would in turn have to be convinced beyond a reasonable doubt of his guilt. The court further advised the defendant that if he entered a plea of guilty, he waived his right to a trial by jury, he waived his right to a trial by the court and there would be no witnesses that would testify. As the court said "It's just a case where you are saying 'Yes Sir, I am guilty', and therefore there is nothing more to do then except to impose a sentence. Do you understand that?" The defendant replied "Yes, Sir." The court further advised the defendant that his appointed counsel would represent him to the best of his ability if he wished to have a trial. The court then asked the defendant if he had any questions and the defendant answered "Yes" he did, and replied that "I was intoxicated." He admitted to the court at this time he remembered being in the store, that he found the checks in a paper bag in an alley, and he remembered giving the check to the girl in the store. Defense counsel then advised the court that he in turn had advised the defendant that intoxication was not a defense in this case to a charge of forgery. At this time the State's Attorney advised the court that the examination of defendant's belongings at the time of his arrest disclosed an application made by him for a driver's license in the name of "Charles Lane," the payee on the stolen checks.

The court then queried the defendant as to whether he had been promised probation and the defendant replied he had not. The court advised him that probation was a matter for the court's decision. Defendant's contention that he was not advised of his right to persist in a plea of guilty is contrary to the evidence in the record; his contention that he was not advised of the minimum and maximum sentence is contrary to the record, and his contention that he was not advised of the elements of the offense is likewise contrary to the record.

■■ The only element which the court failed to specifically inquire about was whether any force or threats had been used. It is obvious under the lengthy discussion of the possible effects of the plea of guilty

that no force or threats were used. We have on numerous times stated that substantial compliance with Rule 402 is the test of whether the plea is in fact voluntary. Attention is directed to *People v. Hickman* (1973), 9 Ill.App.3d 39, 291 N.E.2d 523, and *People v. Ellis* (1974), 16 Ill.App.3d 282, 306 N.E.2d 53, wherein we discussed the conflict in the appellate jurisdictions as to the determination of voluntariness of a guilty plea. We adhere to our decision in *Ellis* and find that under the facts in this case that there was substantial compliance under Rule 402. See also *People v. Shepard* (1973), 10 Ill.App.3d 739, 295 N.E.2d 310; *People v. Krassel* (1973), 12 Ill.App.3d 64, 298 N.E.2d 384; *People v. Compton* (1973), 16 Ill.App.3d 196, 305 N.E.2d 582; *People v. Williams* (1973), 16 Ill.App.3d 199, 305 N.E.2d 544.

We turn then to the second contention of the defendant that he was improperly denied the right to have counsel other than the public defender. At the outset the public defender was appointed for the defendant. The public defender subsequently filed a motion for reduction of bail, a motion for discovery, a motion to dismiss the indictment, a motion to suppress physical evidence, and a motion to suppress identification testimony. Subsequently, on the 10th of October, 1972, the defendant appeared in court and requested the appointment of "another lawyer" on the basis that the public defender wanted the defendant to plead guilty. The court refused to appoint another attorney. Later, however, during one of the numerous hearings, the State's Attorney pointed out that the court had previously advised the defendant that he could renew "his request for an attorney of some kind and I would like to see that taken care of at this time. I don't want the issue to be raised on the date of trial if I can avoid it." At this point the defendant replied, "I ain't got nothing to say." At no time thereafter did the defendant request other counsel.

The statutory provisions for the appointment of counsel for indigent defendants are found in section 4 of the Public Defender Act (Ill. Rev. Stat. 1971, ch. 34, sec. 5604) and section 113—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, sec. 113—3), which provide that in the original instance, for good cause shown, where the accused shall demand the appointment of counsel other than the public defender, the court thereupon shall appoint other counsel. That is not the situation in the case before us. As indicated above, the public defender herein had dutifully represented the defendant up until the time the defendant decided he wanted other counsel. We do not find that under the provisions of the above statutes the defendant was entitled to other counsel at the time he decided to reject the services of the public defender. When the defendant represented to the court that the public defender advised him

to plead guilty, the court stated to the defendant that if he wished a trial that the public defender would represent him to the best of his ability on a not-guilty plea. In *People v. Gray* (1965), 33 Ill.2d 349, 211 N.E.2d 369, the defendant's private attorney withdrew and the defendant asked for an attorney other than the public defender. In *Gray* the court cited with approval the opinion of the Federal court in *United States v. Thompson* (S.D.N.Y. 1944), 56 F.Supp. 683: "I have always believed the law to be that the choice of counsel for indigent persons accused of crime was the court's and not the defendant's." (56 F.Supp. at 688.) "It seems to me the choice must be the court's and not the defendant's and that such a choice should not be subject to impeachment on the ground of a claimed displeasure with the appointment or the lack of confidence in the attorney unless there is good cause why the appointment should not have been made. * * *" The supreme court in *Gray* went on to state at 355:

> * * * "We therefore hold that section 2 of division XIII of the Criminal Code and section 4 of the act relating to public defenders require appointment of nonpublic defender counsel in the first instance when requested by an indigent defendant, but that subsequent appointments may be either of the public defender or other lawyers as the court may, in the exercise of its sound discretion, decide. No abuse of such discretion is indicated here."

Subsequent to the *Gray* case section 4 of the Public Defender Act (Ill. Rev. Stat. 1971, ch. 34, sec. 5604) was amended to add "and for good cause shown" as the necessary requirement for appointment of counsel other than the Public Defender.

■■ Under the facts in the case before us we do not find that the trial court abused its discretion in refusing to appoint counsel other than the Public Defender as requested by the defendant during the pendency of the trial.

■■ The last contention of the defendant is that the sentence of 2-6 years is excessive. The testimony of the defendant in his application for probation disclosed he had been sentenced for burglary in 1961. In response to his own counsel's query "What was the burglary that you were convicted of in 1961?" the defendant replied "A bunch of them." The defendant was released on parole for the 1961 conviction, was re-committed to the penitentiary, was released in 1969, and less than 3 years later he was charged with the instant offense. In view of the defendant's record in this regard the sentence of 2-6 years was certainly not excessive.

Judgment affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.