THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRIETTA COLEMAN, Defendant-Appellant.

(No. 58799;

First District (1st Division)—October 7, 1974.

James J. Doherty, Public Defender, of Chicago (Matthew J. Beemsterboer and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, Henrietta Coleman, was indicted for murder and pleaded guilty to voluntary manslaughter pursuant to a plea bargaining agreement. She was sentenced to 5 to 15 years in the Illinois State Penitentiary. She contends that she was not properly admonished as to the

necessary elements of voluntary manslaughter nor to the maximum sentence that would be imposed.

When the case was called the following ensued:

> "State's Attorney: Henrietta Coleman is before the court, Judge, in indictment 72-1904. There has been in this case a continuing conference and I have conferred with Mr. Williams [Defense Attorney] and there has been certain offers and recommendations made on a reduced charge of voluntary manslaughter to Mr. Williams for conveyance to Henrietta Coleman.

> Namely, in return for a plea of guilty in this cause on this indictment the State would reduce the charge from murder to voluntary manslaughter, in return for a plea, to an agreed sentence of 5 to 15, is that correct, Mr. Williams?

> Defense Attorney: That is correct.

> State's Attorney: That has been conveyed to Mrs. Coleman?

> Defense Attorney: Yes, that's right. At this time, your honor, we would withdraw our plea of not guilty to murder and enter a plea of guilty to voluntary manslaughter.

> The Court: The lesser included offense, is that correct?

> Defense Attorney: That's correct, your honor.

> The Court: Is that correct, ma'am?

> The Defendant: Yes, sir.

> The Court: You understand you are pleading guilty that you did, on April 21st, 1972, commit the offense of voluntary manslaughter in that you did kill one Jason Schivers, is that correct, ma'am?

> The Defendant: That's right, sir."

The record reflects that the defendant was then asked whether she understood that she was waiving her right to a trial and to the right to confront the witnesses against her. To each question she answered: "Yes." The following colloquy then took place:

> "The Court: Do you understand by pleading guilty to the crime of voluntary manslaughter I could sentence you to the Illinois State Penitentiary for a minimum of one to a maximum of twenty years. That is the most I could give you, do you understand that?

> The Defendant: Yes.

> The Court: No promises were made to you or threats made to get you to plead guilty with the exception of the results of the conference. Basically, in the conference I told your attorney what had been agreed upon between your attorney and the State's Attorney's office, I went along with it. If you plead guilty I would

sentence you to the Illinois State Penitentiary for a minimum of 5 to a maximum of 15, is that correct?

The Defendant: Yes.

The Court: That is the only promise that has been made to you; if you plead guilty you would go to the penitentiary for 5 to 15 years, do you understand that?

The Defendant: No, I don't understand that.

The Court: If you plead guilty you could go to the penitentiary, and the earliest you could get out would be 5 years, less time off for good time, that would be up to the parole board, do you understand that? But you would not stay in the penitentiary any longer than 15 years, which would be the maximum they could keep you, do you understand that?

The Defendant: I don't know.

Defense Attorney: What she does not understand, Judge, is because I had explained to her the minimum. I think her confusion is between the minimum and the maximum.

The Court: You could possibly get out in three years and six months, whatever it is. Do you understand you could get out in that time? If you go out there and you adapt to the programs. Apparently, you are 60 years old, and that's up to you, how long you stay out there, do you understand that?

The Defendant: Yes.

The Court: Knowing all that, is that what you agreed to? Is that the sentence you agreed to with your attorney?

The Defendant: I don't understand that.

The Court: I will explain.

The Court: Yes, Counsel.

(Short interruption.)

The Defendant: Yes.

The Court: Do you agree to that? Do you understand that now?

The Defendant: Yes.

The Court: And that is what you want to do?

The Defendant: Yes."

Then followed a stipulation of the facts: Jason Schivers was the defendant's common-law husband, and he was in a bar with another woman. The defendant came in and saw him kissing the other woman. She told him to come home, but he refused. She left and came back a few minutes later armed with a .38-caliber revolver. She fired two shots at Schivers while he was sitting on a bar stool.

The State then recommended a sentence of 5 to 15 years and the defense attorney said: "In mitigation, Judge, I would add that this de-

fendant has no prior criminal background and, as the State has indicated, she is 60 years of age."

"The Court: What do you wish to say, ma'am? Do you wish to say anything to me?

The Defendant: Nothing but I can go home.

The Court: You can't go home. I hope you will make the earliest possible pardon so you will go back out. Basically, you have led a good life up to this time. Apparently, you and the man you were living with, your husband in a common-law situation, apparently jealousy got the best of you and this is what happened. It is sad that at your age you couldn't stay out of trouble, but you must pay your debt to society. Do you understand that?

The Defendant: Yes."

The defendant contends she was not sufficiently admonished under Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, § 402) which provides in part:

"(a) Admonitions to Defendant. The Court shall not accept a of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge."

■■ We recognize that appellate courts in this State have divided on whether mere reference to the name of the crime charged is sufficient to apprise the defendant of its nature. (See *People v. Diaz*, 15 Ill.App.3d 280, 304 N.E.2d 103; *People v. Tennyson*, 9 Ill.App.3d 329, 292 N.E.2d 223; and *cf. People v. Triplett*, 18 Ill.App.3d 619, 310 N.E.2d 428; *People v. Green*, 17 Ill.App.3d 918, 309 N.E.2d 75; and *People v. Krantz*, 12 Ill.App.3d 38.) But after oral arguments were heard in this case, the supreme court resolved the question in *People v. Krantz*, Docket Nos. 46078, 46252 cons., May Term 1974. The court noted that the entire record may be considered in determining whether or not there was an understanding by the accused of the nature of the charge; that the "recital by the assistant State's Attorney of the anticipated prosecutive evidence made clear what criminal conduct of [the defendant] the People expected to prove" that neither "the defendant nor his attorney demurred to the prosecutor's statement"; and that when the trial court asked the defendant if he understood what he was charged with in the indictment, the defendant responded that he did. The court concluded with what we consider to be the applicable rule: "The remarks and advice of the court must be read in a practical and realistic manner. The essentials have been complied with if an ordinary person in the circumstances of the accused would understand them as conveying the information re-

674

quired by the rule." We judge that the remarks of the trial court in this case and the recitation of the stipulated facts by the assistant State's Attorney meet the requirements of the rule.

██ The defendant also contends that it does not affirmatively appear in the record that she understood the sentence to be imposed upon her pursuant to the plea bargaining agreement.

In our view the court went to considerable length to explain the consequences of the plea; and, although the defendant indicated some uncertainty, the record reflects sufficient facts to justify the court's conclusion that the plea was voluntarily made and that the defendant was aware of its consequences.

The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE and GOLDBERG, JJ., concur.