COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Clements and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


YANCY BLUE
                                                        OPINION BY
v.        Record No. 2036-04-4        JUDGE JOHANNA L. FITZPARTICK
                                                        MAY 15, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
James W. Haley, Jr., Judge

James G. Connell, III (Devine & Connell, P.L.C., on brief), for
appellant.

Leah A. Darron, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General; Elizabeth L. Stewart, Third Year
Law Student, on brief), for appellee.


Yancy Blue was convicted of statutory burglary and grand larceny.  On appeal, Blue

contends the trial court erred in denying his request for court-appointed counsel.  For the reasons

that follow, we reverse his convictions and remand for a new trial.

BACKGROUND

On June 3, 2002, Blue was indicted for statutory burglary and grand larceny.  On July 1,

2002, Blue appeared for arraignment with retained counsel and trial was set for January 10,

2003.  On January 10, 2003, Blue appeared with his counsel and the trial judge granted Blue's

motion to continue the trial to April 22, 2003.  On March 27, 2003, Blue appeared for a hearing

on the Commonwealth's motion to continue his trial.  Blue's counsel did not appear, but she had

informed the Commonwealth that she did not object to the continuance.  The trial judge granted

the Commonwealth's motion and set trial for August 19, 2003.  At a hearing on August 4, 2003,

Blue appeared without his counsel and informed the trial judge that he had been unable to

contact his retained attorney and needed time to hire new counsel. Blue's retained attorney had surrendered her license to practice law and had not returned his retainer. The trial judge continued the case until December 1, 2003, for a status review.

At the status review on December 1, 2003, Blue again appeared without retained counsel and told the trial judge that he made too much money to qualify for court-appointed counsel. The trial judge told Blue that he needed to sign a waiver of counsel form. The trial judge stated that the signed waiver "doesn't mean that you can't have a lawyer, but it means we're going to trial without one if you don't have one." The trial judge stated that Blue had adequate time to retain new counsel, that Blue was playing "fast and loose with the Court," that they would pick a trial date, and that the trial would be held on the agreed upon date whether or not Blue had retained counsel. The Commonwealth argued that the victim wanted to resolve the charges and requested a trial date within three to four months, but the trial judge denied the request and set trial for June 2, 2004.

On May 20, 2004, Blue informed the trial judge that his circumstances had changed and he was unable to afford counsel and requested court-appointed counsel. The trial judge told Blue to complete a financial statement, and if Blue qualified, he would appoint counsel. Blue told the trial judge that he lost his prior job because his employer went out of business and he was currently working for a business building retaining walls. Because Blue had difficulties reading, he completed a sworn financial statement with the help of his mother. Blue listed a monthly income of $800 to $1,000 and total monthly expenses of $950. Blue also indicated on the statement that he was currently separated from his employment due to weather. Under medical expenses, Blue listed $750 per month. When asked about the medical expenses, Blue stated he did not have monthly medical expenses of $750, but the $750 was for rent and other bills. Blue listed $200 per month in child care payments. When asked about the child care payments, Blue

explained that he was separated from his wife and he gave her the money to care for their son. According to the financial statement, there were two individuals in his household and he supported one dependent. His child care payments were not paid pursuant to a court order. The trial judge reviewed the financial statement and found that Blue made a false representation regarding his medical expenses, that his child care payments were not court ordered, and as a result, he did not qualify for court-appointed counsel. He also confirmed the trial date of June 2, 2004. On June 2, 2004, Blue appeared for trial without an attorney, and after discussions with his mother and wife, he entered *nolo contendere* pleas to the charges.[1]

## ANALYSIS

On appeal, Blue contends the trial judge's denial of his request for court-appointed counsel was reversible error. In support of that contention, Blue argues he did not voluntarily waive his right to counsel when he signed the waiver on December 4, 2003, his conduct in attempting to obtain counsel did not constitute a *de facto* waiver of his right to counsel, and he established on May 20, 2004, that he was qualified for court-appointed counsel under Code § 19.2-157. We agree.

### Waiver of the Right to Counsel

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . the assistance of counsel for his defense." This case involves the waiver of a fundamental constitutional right—the right to trial counsel. Commonwealth v. Edwards, 235 Va. 499, 505, 370 S.E.2d 296, 298 (1988).

---

[1] Although Blue entered *nolo contendere* pleas to the charges, unless an accused intelligently waives his right to counsel, "'the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or liberty.'" Bailey v. Commonwealth, 38 Va. App. 794, 802, 568 S.E.2d 440, 444 (2002) (quoting Edwards v. Commonwealth, 21 Va. App. 116, 123, 462 S.E.2d 566, 570 (1995)). Thus, Blue's *nolo contendere* pleas do not bar consideration of his appeal.

"We review the trial court's findings of historical fact only for 'clear error,' but we review *de novo* the trial court's application of defined legal standards to the particular facts of a case." Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475-76 (1997) (citing Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996)). In this context, although we review the trial court's factual findings only for clear error, whether Blue's actions and statements constituted a waiver is a "'legal determination that we review *de novo*.'" Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)).

> This right to counsel includes "not only an indigent's right to have the government appoint an attorney to represent him, but also the right of any accused, if he can provide counsel for himself by his own resources . . . to be represented by an attorney of his own choosing." Thacker v. Slayton, 375 F. Supp. 1332, 1335 (E.D. Va. 1974). However, this right is a qualified right which is limited by a "countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis."

Bolden v. Commonwealth, 11 Va. App. 187, 190, 397 S.E.2d 534, 536 (1990) (quoting Paris v. Commonwealth, 9 Va. App. 454, 460, 389 S.E.2d 718, 721-22 (1990)).

It is well settled that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense unless he was represented at trial by an attorney." Lemke v. Commonwealth, 218 Va. 870, 872, 241 S.E.2d 789, 791 (1978). While we view the evidence in this case in the light most favorable to the Commonwealth, we must also "indulge every reasonable presumption against waiver of counsel." McNair v. Commonwealth, 37 Va. App. 687, 698, 561 S.E.2d 26, 32 (2002) (*en banc*). "The burden rests upon the party relying on a waiver to prove the essentials of such waiver by clear, precise and unequivocal evidence. The evidence must not leave the matter to mere inference or conjecture but must be certain in every particular." White v. Commonwealth, 214 Va. 559, 560, 203 S.E.2d 443, 444 (1974). "'Whether a waiver is voluntary and competent depends upon the particular circumstances of

- 4 -

each case, including the defendant's background, experience, and conduct, but no particular cautionary instruction or form is required.'" Watkins v. Commonwealth, 26 Va. App. 335, 343, 494 S.E.2d 859, 863 (1998) (quoting Church v. Commonwealth, 230 Va. 208, 215, 335 S.E.2d 823, 828 (1985)).

"[I]t is clear that certain dilatory conduct on the part of a defendant may also be properly viewed as an effective *de facto* waiver of Sixth Amendment protections." McNair, 37 Va. App. at 696, 561 S.E.2d at 31. "To establish a *de facto* waiver or a constructive discharge, Virginia law requires that we view the defendant's conduct in its entirety, together with all the other circumstances of the case, that support the conclusion his or her conduct tended to unreasonably and unjustifiably delay trial." Bailey v. Commonwealth, 38 Va. App. 794, 803, 568 S.E.2d 440, 445 (2002).

Blue appeared at the first hearing with retained counsel, and she continued to represent him until she surrendered her law license. Blue then requested on two occasions that the trial judge allow him time to retain new counsel and stated he was trying to get the funds to do so because he had been told he did not qualify for court-appointed counsel. Although, on the second occasion, the trial judge granted another continuance, he required Blue sign a waiver of his right to counsel at that time stating, "[The waiver] doesn't mean that you can't have a lawyer, but it means we're going to trial without one if you don't have one."

The Supreme Court has never required that trial courts use a particular procedure or set of inquiries in ascertaining whether a waiver of trial counsel was voluntary and intelligent. Harris v. Commonwealth, 20 Va. App. 194, 196, 455 S.E.2d 759, 760 (1995). However, the defendant "should be made aware of the dangers and disadvantages of self-representation so that the *record* will establish that 'he knows what he is doing and his choice is made with eyes open.'" Church, 230 Va. at 215, 335 S.E.2d at 828 (emphasis in original) (quoting Faretta v. California, 422 U.S.

- 5 -

806, 835 (1975)).  There is no evidence in the record that the trial judge made Blue aware of the dangers and disadvantages of waiving his right to counsel when Blue signed the written waiver form.  Thus, Blue did not knowingly and intelligently waive his right to counsel when he signed the written waiver form on December 1, 2003.

Likewise, Blue's actions did not constitute a *de facto* waiver of his right to counsel.  See McNair, 37 Va. App. at 698, 561 S.E.2d at 32.  In McNair, the trial judge granted court-appointed counsel's request to withdraw due to a breakdown in communication.  Id. at 691-92, 561 S.E.2d at 28.  The trial judge appointed counsel, who was McNair's fifth appointed counsel.  He then told McNair that this was his last counsel.  Id. at 692, 561 S.E.2d at 28.  On the scheduled trial date, McNair expressed dissatisfaction with his counsel, but counsel stated she was prepared for trial.  Id. at 692, 561 S.E.2d at 29.  The trial judge granted counsel's motion to withdraw, but asked her to remain in the courtroom as standby counsel and he told McNair the trial would proceed with McNair acting *pro se*.  McNair told the trial judge that he was not prepared to proceed without the assistance of counsel.  Id. at 693, 561 S.E.2d at 29.  In holding that there was no *de facto* waiver of counsel by McNair, this Court stated that McNair was "difficult," but that his behavior did not show a "pattern of conduct calculated to prevent his trial from ever occurring."  Id. at 698, 561 S.E.2d at 32.

In contrast, in Bolden we held that the trial judge did not err in requiring Bolden to go to trial without the assistance of counsel.  Bolden, 11 Va. App. at 189, 397 S.E.2d at 535.  Bolden appeared for trial with retained counsel, but requested a continuance to retain different counsel. Id.  The trial judge granted Bolden a continuance to retain counsel; however, Bolden failed to retain new counsel and on the day of his continued trial, he requested a second continuance to retain counsel.[2]  Id. at 189-90, 397 S.E.2d at 536.  The trial judge granted a short continuance

---

[2] There was no evidence that Bolden lacked funds to retain counsel.

and told Bolden that if he appeared without counsel, the court would consider Bolden to have waived his right to be represented by counsel. <u>Id.</u> at 189, 397 S.E.2d at 536. The trial judge also offered Bolden the services of court-appointed counsel, which Bolden refused. <u>Id.</u> at 190, 397 S.E.2d at 536. The Commonwealth's witnesses had appeared for trial each time Bolden requested a continuance. <u>Id.</u> at 189-90, 397 S.E.2d at 536. After the second continuance, Bolden again appeared without retained counsel. The trial judge denied Bolden's third request for a continuance to retain counsel, and tried Bolden without the assistance of counsel. <u>Id.</u> at 190, 397 S.E.2d at 536. We held that Bolden had waived his right to counsel due to his dilatory conduct because Bolden was given a reasonable opportunity to obtain counsel, he was advised that the failure to appear without counsel could be deemed a waiver of his right to counsel, the Commonwealth's witnesses were present each time Bolden requested a continuance, and *he declined the court's offer to appoint counsel* pursuant to Code § 19.2-157. <u>Id.</u> at 192-93, 397 S.E.2d at 537.

In this case, after being abandoned by his retained counsel, Blue attempted to employ other retained counsel, but was unable to do so due to the lack of funds. When Blue appeared on December 1, 2003, and explained his difficulties in retaining counsel, trial had not been set and there was no evidence that the Commonwealth's witnesses were present and ready for trial. Blue never indicated to the court that he wanted to waive counsel and in fact continued to attempt to get representation. Although the trial judge acquiesced in both his requests and the Commonwealth's request for continuances, the record does not support the finding that Blue's conduct, when viewed in its entirety, was calculated to prevent his trial from ever occurring. Thus, under the facts of this case, Blue's actions were not a *de facto* waiver of his right to counsel.

<u>Code § 19.2-159</u>

Code § 19.2-157 provides in pertinent part:

> [W]henever a person charged with a criminal offense the penalty for which may be . . . confinement in the state correctional facility or jail . . . appears before any court without being represented by counsel, the court shall inform him of his right to counsel. The accused shall be allowed a reasonable opportunity to employ counsel or, if appropriate, the statement of indigence provided for in § 19.2-159 may be executed.

Code § 19.2-159(A) provides in pertinent part:

> If the accused shall claim that he is indigent, and the charge against him is a criminal offense which may be punishable by . . . confinement in the state correctional facility or jail . . . the court shall determine from oral examination of the accused or other competent evidence whether or not the accused is indigent within the contemplation of law pursuant to the guidelines set forth in this section.

The guidelines set forth in Code § 19.2-159(B) require the trial court to take into consideration the "net income of the accused," "all assets of the accused which are convertible into cash within a reasonable period of time without causing a substantial hardship or jeopardizing the ability of the accused to maintain a home" and "exceptional expenses," which "shall include but not be limited to costs for medical care, family support obligations, and child care payments." Code § 19.2-159(B)(3) provides that an accused is entitled to appointed counsel if his "available funds are equal to or below 125 percent of the federal poverty income guidelines prescribed for the size of the household of the accused by the federal Department of Health and Human Services."

According to the Department of Health and Human Services, in 2004 the poverty guideline was $9,310 for a household of one and $12,490 for a household of two. Annual Update of the HHS Poverty Guidelines, 69 Fed. Reg. 7336 (February 13, 2004). Therefore

- 8 -

125% of the poverty guidelines in 2004 was $11,638 for a household of one and $15,613 for a household of two.

In his financial statement of May 20, 2004, Blue listed a weekly income of $200 to $250; thus, his annual income was $10,400 to $13,000. Blue's financial statement listed no assets other than twelve dollars in cash. Blue initially incorrectly listed $750 for medical expenses on the financial statement. However, the record reflects that Blue's mother helped him complete the information because he had difficulties reading and he did not understand the form. Upon further questioning by the court, Blue stated he believed that the $750 was for living expenses rather than medical expenses. The trial judge disallowed the expense of $750. Blue also listed in the financial statement an expense of $200 per month for child care for his child. The trial judge noted that Blue was not under a court order to provide the child care payments and disallowed the expense.

Nothing in Code § 19.2-159 or in the financial statement form requires the child care payments to be made pursuant to a court order. In fact it would be contrary to the intent of the child support statutory requirements to penalize voluntary payments of a support obligation. See Code § 20-61; Lehman v. Lehman, 38 Va. App. 598, 605, 567 S.E.2d 571, 575 (2002) (finding that both parents owe a duty of support to their minor child). Blue supported himself and one child. Blue's annual income was $10,400 to $13,000. At a minimum, deducting Blue's child care payments, his annual income was well below 125% of the 2004 federal poverty guidelines for an individual with one dependant, and he was entitled to court-appointed counsel.

Although Blue had retained counsel in 2002 when this case began, that fact does not prove that he was ineligible for court-appointed counsel in May 2004 when his circumstances had changed. See Lemke, 218 Va. at 874, 241 S.E.2d at 792 (finding that although the defendant was represented by retained counsel in a lower court proceeding, that fact did not necessarily

prove she was ineligible to receive the benefit of court-appointed counsel on appeal to the circuit court).

## CONCLUSION

For these reasons, we hold the trial court erred in denying Blue's request for court-appointed counsel. Accordingly, we reverse Blue's convictions and remand for a new trial if the Commonwealth is so advised.

<u>Reversed and remanded.</u>