COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Ortiz and Lorish
Argued at Norfolk, Virginia


RONALD K. KALIF-EL, SOMETIMES KNOWN AS
 RONALD KOMONICH KALIF-EL
                                                        MEMORANDUM OPINION* BY
v.         Record No. 1141-24-1                        JUDGE DANIEL E. ORTIZ
                                                        JULY 29, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Roger A. Whitus (Slipow & Robusto P.C., on brief), for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


This case concerns a purported de facto waiver of the right to counsel. After many

continuances, Ronald K. Kalif-El's retained counsel did not appear for trial. Although it appeared

Kalif-El had retained new counsel, the Circuit Court for the City of Virginia Beach required Kalif-

El to try the case *pro se*. Following the bench trial, the trial court convicted Kalif-El of sexual

battery and assault and battery. On appeal, Kalif-El contends that the trial court erred by "forcing

[him] to proceed *pro se*" at trial and denying his motion to set aside the verdict because "proceeding

in the absence of counsel was a violation of [his] Sixth Amendment right to counsel." We agree.

Kalif-El did not expressly or de facto waive his right to counsel, and trial in counsel's absence

violated his Sixth Amendment rights. We thus reverse Kalif-El's convictions and remand for

proper proceedings.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

I. Pretrial Proceedings

On November 16, 2022, the Virginia Beach General District Court convicted Kalif-El of sexual battery and assault and battery. He appealed the convictions for a trial de novo in the Circuit Court of the City of Virginia Beach. John Hooker represented Kalif-El at the time.

Kalif-El first appeared in the trial court on January 5, 2023. Over the next year, the case was continued eleven times. The court first continued the trial to February 23, 2023, because Kalif-El had just retained counsel.

By order entered on February 17, 2023, the trial court continued the matter, on Kalif-El's motion with the Commonwealth's concurrence, for trial on March 16, 2023. The order noted that a defense witness was unavailable and said, "Misdemeanor Case LAST Time."

On defense motion and with the Commonwealth's concurrence, the trial court continued the matter for a third time on February 23, 2023. Setting the matter for trial on March 30, 2023, the court's order noted that defense counsel was unavailable.[2]

On March 30, 2023, upon defense motion with the Commonwealth's concurrence, the trial court continued the trial to April 28, 2023. The order noted, "Defense counsel unavailable. Last agreed."

---

[1] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). This requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

[2] The record contains a second order, entered March 20, 2023, continuing the March 16 trial date on a joint motion to March 30, 2023. The order noted that the Commonwealth was in the juvenile court and defense counsel was unavailable.

By order entered on April 27, 2023, the trial court granted the defense a continuance until June 8, 2023. The Commonwealth again concurred. The order said, "Was supposed to be last continuance but defense counsel is sick."

The trial court continued the trial for a sixth time on June 8, 2023, on defense motion and with the Commonwealth's concurrence. The stated reason for the continuance was "for defense to review discovery." The circuit court set a new trial date of July 20, 2023.[3]

On July 20, 2023, the trial court continued the case to September 7, 2023, noting that "defense counsel [was] taken to ER yesterday."

The trial was continued again on September 6, 2023, because "defense counsel [was] still recovering."

On September 19, 2023, the trial court again continued the case, over the Commonwealth's objection, to September 26, 2023, to set a new trial date, because "defense counsel [was] not prepared, still unwell from illness and hospital."

By order entered on September 26, 2023, the court set the trial by agreement for November 9, 2023. Explaining why the trial date was more than 180 days after Kalif-El's arrest, the court noted, "Lots of continuances. Defense counsel health issues."

On November 9, 2023, the trial court continued the case for the eleventh time, over the Commonwealth's objection. The order, which set a trial date of January 25, 2024, said that the reason for the continuance was that "[d]efendant wants different [a]ttorney." It added that "Hooker [was] still in for now until [d]efendant [r]etains new one."

Kalif-El appeared for trial on January 25, 2024, but his counsel did not. Kalif-El told the court that he had been unable to contact Hooker because his office phone went unanswered. The Commonwealth explained that Hooker contacted him to let him know that he would not be

---

[3] The Commonwealth provided discovery on July 17, 2023.

available because he had to take his wife to the doctor. But "as [the Commonwealth] understood it," Kalif-El was going to hire new counsel, whom the Commonwealth thought was Roger Whitus. The Commonwealth added that he spoke with Whitus a few days before about whether Kalif-El retained him, and Whitus said that "he ha[d] spoke[n] with Mr. Kalif-El but that no, he had not been retained." The Commonwealth thus opposed any further continuance.

In response, Kalif-El said it took some time to "get the funds together," but he paid Whitus. Even so, Whitus "didn't feel comfortable taking the case today" without a continuance because Whitus "just didn't have the information from Hooker's office to properly prepare for the case." Kalif-El continued that, "A lot of those continuances, Your Honor, are not induced in me not being here—or not being able to be available. It's due to the health of my past attorney." And he wanted a new attorney because he disagreed with Hooker's advice to take a plea deal. He finished by saying that "[he] thought that Mr. Hooker would have at least . . . been here today, but [he hadn't] been able to contact his office" because "they [hadn't] answered the phone."

After the Commonwealth confirmed that it wanted to proceed with trial, the trial court told Kalif-El "I don't think I could have made myself any clearer in November when I told you that this case was not going to get continued again for lack of [a] defense attorney and I said it then and I meant it when I said it." The bench trial thus began as scheduled, with Kalif-El representing himself.[4]

## II. Trial

In July 2022, Kalif-El supervised Micah Range in her job as a sales representative for Hilton Grand Vacations in Virginia Beach. While at work on July 18, 2022, Range received a text message from Kalif-El telling her that the paperwork was complete for a vacation package

---

[4] It was not until Kalif-El, supported by the Commonwealth, questioned whether he could cross-examine the Commonwealth's first witness that the trial court confirmed that it found that Kalif-El waived his right to counsel.

that she had sold to a client. As Range descended the stairs to collect the paperwork, Kalif-El appeared behind her in the stairwell. He said for her to "come here real quick." As she neared him on the stairs, Kalif-El grabbed her and kissed her without her consent. Range objected, told him to stop, and went back down the stairs to continue her work.

About 15 minutes after the incident in the stairwell, Kalif-El texted Range that he had "lost [her] performance review" so she needed to meet him to sign it. Kalif-El told her to meet him in "Dave's" office. When she arrived at the office, Kalif-El was sitting at the desk. He had a folder with only a blank piece of paper inside it, but no performance report. After closing the office door, Kalif-El grabbed Range and forced her to feel his erect penis through his pants. Range pulled away from Kalif-El and left the office. There were no security cameras in the office.

Range reported the two incidents to Angela Forbes, a human resource business partner. Using surveillance camera video, Forbes concluded that Range and Kalif-El had been in the stairwell at the same time that Range reported. Upon her request, Range was transferred to a different work team.[5]

Testifying for the defense, Aaron Boatwright, who worked with Kalif-El, said that after the incident Range said that she could make "all of this go away" if Kalif-El would pay her money.[6] David Harrelson, who was the senior sales manager for the company, was involved in the internal investigation of Range's allegations. The human resources department decided that there was insufficient evidence to fire Kalif-El from the company.

---

[5] Range eventually left her job due, at least in part, to discomfort with Kalif-El.

[6] In rebuttal, Range denied telling Boatwright that she would drop the charges against Kalif-El if he paid her money.

Following all the evidence, the trial court found Range's testimony "believable and convincing," and convicted Kalif-El of the charged offenses.

### III. Post-trial Proceedings

On March 7, 2024, the court granted Hooker leave to withdraw as counsel of record and Whitus was substituted as Kalif-El's retained counsel. Whitus filed a motion to set aside the verdict, alleging that Kalif-El had not waived his right to have counsel represent him at trial and that the evidence was insufficient to support the convictions.

At the hearing on Kalif-El's motion, the trial court reviewed the record, the numerous continuances that were granted, the reasons for the continuances, and the court's notes on the various orders. The court noted that it could not "imagine a case in which a complaining victim in a misdemeanor case has been more disabused by the system." Finding that this circumstance weighed "very very strongly," the trial court denied the motion for a new trial. The trial court then sentenced Kalif-El to 365 days in jail, with 335 days suspended, for sexual battery, and to 365 days, all suspended, for assault and battery. This appeal followed.

### STANDARD OF REVIEW

Although "courts are accorded wide discretion in deciding whether to grant continuances to enable a defendant to secure new counsel," *McNair v. Commonwealth*, 37 Va. App. 687, 697 (2002) (en banc), whether an accused was denied his Sixth Amendment right to counsel is a question of law that we review de novo, *Walker v. Commonwealth*, 71 Va. App. 665, 672 (2020) (citing *Huguely v. Commonwealth*, 63 Va. App. 92, 106-07 (2014)). "In this context, although we review the trial court's factual findings only for clear error, whether [Kalif-El's] actions and statements constituted a waiver is a 'legal determination that we review *de novo*.'" *Blue v. Commonwealth*, 49 Va. App. 704, 710 (2007) (quoting *Commonwealth v. Redmond*, 264 Va. 321, 327 (2002)).

ANALYSIS

I. Waiver of Counsel

On appeal, Kalif-El contends that he did not waive his right to counsel and that the trial court violated his Sixth Amendment rights by requiring him to proceed to trial *pro se*.[7] Neither party contends that Kalif-El expressly waived his right to counsel. The case thus hinges on whether there was a de facto waiver.

The criminally accused have a fundamental constitutional right to representation by an attorney at trial. *See* U.S. Const. amend VI; *see also Gideon v. Wainwright*, 372 U.S. 335, 343-44 (1963). Thus, "a defendant should be afforded a fair opportunity to secure counsel of his own choice," *Powell v. Alabama*, 287 U.S. 45, 53 (1932), or, if the defendant is indigent, representation must be "made available to him by the court," *Walker*, 71 Va. App. at 672. A defendant may nonetheless decide to waive his Sixth Amendment right to counsel. *See Faretta v. California*, 422 U.S. 806, 814 (1975). But "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony,

---

[7] At the outset, the Commonwealth asserts that this Court cannot consider the issue because Kalif-El failed to file transcripts or written statements of fact for the numerous pretrial hearings that resulted in continuances. The Commonwealth claims that the transcripts or written statements of fact are indispensable to appellate review. We disagree. "Whether the record is sufficiently complete to permit our review on appeal is a question of law subject to our *de novo* review." *Bay v. Commonwealth*, 60 Va. App. 520, 529 (2012). Under Rule 5A:8(b)(4)(ii), "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." We recognize that "[t]o establish a *de facto* waiver or a constructive discharge [of the right to counsel], Virginia law requires that we view the defendant's conduct in its entirety, together with all the other circumstances of the case, that support the conclusion his or her conduct tended to unreasonably and unjustifiably delay trial." *Bailey v. Commonwealth*, 38 Va. App. 794, 803 (2002). But we find that the record—which includes the continuance orders, the trial court's notes, and the trial transcript where Kalif-El explained why he wanted new counsel and where the court found that he waived his right to counsel—is sufficient for this Court to properly decide whether Kalif-El de facto waived his right to counsel.

- 7 -

unless he was represented by counsel at his trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972).

To be valid, a Sixth Amendment right to counsel waiver "must be the voluntary act of the defendant and must constitute a knowing and intelligent abandonment of a known constitutional right or privilege." *McNair*, 37 Va. App. at 695 (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). "The waiver of the right to counsel need not be express; it may be inferred from a defendant's conduct." *Walker*, 71 Va. App. at 673; *see, e.g.*, *McNair*, 37 Va. App. at 696 ("[C]ertain dilatory conduct on the part of a defendant may also be properly viewed as an effective *de facto* waiver of Sixth Amendment protections."). "To establish a *de facto* waiver . . . , Virginia law requires that we view the defendant's conduct in its entirety, together with all the other circumstances of the case, that support the conclusion his or her conduct tended to unreasonably and unjustifiably delay trial." *Blue*, 49 Va. App. at 711-12 (quoting *Bailey v. Commonwealth*, 38 Va. App. 794, 803 (2002)).

"[T]he burden is on the Commonwealth to prove 'by clear, precise and unequivocal evidence' that the defendant did actually waive his right to counsel." *Bolden v. Commonwealth*, 11 Va. App. 187, 191 (1990) (quoting *Lemke v. Commonwealth*, 218 Va. 870, 873 (1978)). "While we view the evidence in this case in the light most favorable to the Commonwealth, we must also 'indulge every reasonable presumption against waiver of counsel.'" *Blue*, 49 Va. App. at 711 (quoting *McNair*, 37 Va. App. at 698).

*Blue v. Commonwealth* is instructive. In *Blue*, after several continuances, Blue appeared without his counsel and told the court that he had been unable to contact his retained attorney and needed time to hire new counsel. 49 Va. App. at 711. In fact, Blue's retained attorney had surrendered her license to practice law and had not returned his retainer. *Id.* The case was again continued for a status review. *Id.* Blue appeared at a status review hearing without retained

- 8 -

counsel and, by his own admission, did not qualify for court-appointed counsel at that time. *Id.*
at 708. The trial court then told Blue that if he appeared without counsel at trial, the court would
consider such an appearance as a waiver of his right to counsel. *Id.* Later, Blue "informed the
trial judge that his circumstances had changed and he was unable to afford counsel and requested
court-appointed counsel." *Id.* at 709. The trial court did not appoint Blue counsel because, due
to errors in the financial statement, it determined that he did not qualify. *Id.* The court then
found that Blue had de facto waived his right to representation. *Id.* Blue appeared a few weeks
later without counsel and entered nolo contendere pleas. *Id.*

On appeal, this Court, after considering *Bolden v. Commonwealth*, and *McNair v.
Commonwealth*, reversed the circuit court's finding of a de facto waiver and held that "the trial
court erred in denying Blue's request for court-appointed counsel." *Blue*, 49 Va. App. at 716. It
reasoned that "Blue's actions did not constitute a de facto waiver of his right to counsel" in part
because "Blue never indicated to the court that he wanted to waive counsel." *Id.* at 712, 714. In
fact, Blue "continued to attempt to get representation" even "after being abandoned by his
retained counsel"—but he "was unable to do so due to the lack of funds." *Id.* at 712, 714.

Here, nothing in the record shows or suggests that Kalif-El ever wanted to proceed *pro
se*. At the outset of the case, Kalif-El retained Hooker. Hooker represented Kalif-El in the
general district court proceedings and on appeal to the trial court. Hooker also represented
Kalif-El at the initial trial court hearings. And Kalif-El maintained his wish to have
representation up to trial. In fact, although he was working to hire new counsel, Kalif-El
explained at trial that he believed that Hooker would appear for trial despite their prior
disagreement. Moreover, at that point, Hooker had not moved to withdraw, nor had he been
relieved of his obligation to represent Kalif-El. *See* Rule 1:5(d)(1) ("Counsel of record may not
withdraw from or terminate appearances in a case except by (i) leave of court after notice to the

client of the time and place of a motion for leave to withdraw, or (ii) pursuant to" rules relating to limited-scope appearances of attorneys in civil matters). Indeed, Hooker, knowing that he was still in the case, contacted the Commonwealth to let him know that he would be unavailable for the trial because he had to take his wife to the doctor. What's more, the court's last continuance order noted, "Hooker still in for now until [d]efendant [r]etains new [counsel]."

Likewise, viewed in its entirety together with all the other circumstances of this case, Kalif-El's conduct does not support the conclusion that he de facto waived his right to counsel. Of the eleven continuances, two were because Kalif-El's counsel was generally unavailable, including one in which the Commonwealth was also unavailable; five were because of defense counsel's illness and recovery; and one was to allow defense counsel to review discovery after his sickness—discovery responses that did not come until over a month later and days before the new trial date. And, for good measure, the Commonwealth concurred in all but two of the continuances. None of this suggests Kalif-El's dilatory conduct or "a pattern of conduct calculated to prevent his trial from ever occurring." *McNair*, 37 Va. App. at 698. Indeed, these continuances were beyond Kalif-El's control, not due to some delay strategy.

To be sure, Kalif-El grew dissatisfied with Hooker and wanted to replace him because they disagreed about whether Kalif-El should plead guilty. The trial court thus granted Kalif-El two months to hire a different attorney but clarified that Hooker remained counsel of record until he was replaced. But Kalif-El appeared without counsel for his scheduled trial on January 25, 2024. Even so, like *Blue*, it took time for Kalif-El to raise funds to hire a new attorney, and there is no dispute that he did not qualify for court-appointed counsel. He also explained that he hired Whitus, but that Whitus had not received the file materials from Hooker and was therefore not prepared to appear at trial. Indeed, Kalif-El's attempts to contact Hooker's office were unsuccessful. In short, there is no evidence that Kalif-El's conduct "tended to unreasonably and

unjustifiably delay trial." *Blue*, 49 Va. App. at 711-12 (quoting *Bailey*, 38 Va. App. at 803).

Rather, he "continued to attempt to get representation" up to, and including, his trial. *Id.* at 714.

In all, indulging every reasonable presumption against waiver of counsel, the facts and circumstances do not clearly, precisely, and unequivocally show an express or de facto waiver of Kalif-El's right to counsel. The trial court thus violated Kalif-El's Sixth Amendment right to counsel by requiring him to proceed *pro se* at trial.[8] We must therefore reverse Kalif-El's convictions and, if the evidence was sufficient to support his conviction, remand for a new trial. *Id.* at 709 n.1 ("[T]he Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or liberty."); *Smith v. United States*, 599 U.S. 236, 241 (2023) ("Except as prohibited by the Double Jeopardy Clause, it 'has long been the rule that when a defendant obtains reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events.'" (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966))).

---

[8] In *McNair*, we held "that in order to establish a constructive discharge or a *de facto* waiver of counsel by conduct, the record should demonstrate adequate procedural safeguards. Specifically, the record should reflect adherence to the statutory guidelines set forth in Code § 19.2-157 *et seq*., governing the right to counsel." 37 Va. App. at 697. When a defendant "desires to waive his right to counsel, and the court ascertains that such waiver is voluntary and intelligently made, then the court shall provide the accused with a statement to be executed by the accused to document his waiver." Code § 19.2-160. "In the absence of a waiver of counsel by the accused, and if he shall claim that he is indigent, the court shall proceed in the same manner as is provided in [Code] § 19.2-159." *Id.* If the defendant then refuses or otherwise fails to sign the statutorily required forms or statements, "the court shall note such refusal on the record[,]" and "[s]uch refusal shall be deemed to be a waiver of the right to counsel[.]" *Id.* It is error for a trial court to fail to meet the procedural requirements for waiver of the right to counsel. *Van Sant v. Commonwealth*, 224 Va. 269, 273-75 (1982).

Here, our review of the record shows that the trial court never offered Kalif-El any form to show that he waived his right to counsel, much less that he refused to sign one. In fact, the Commonwealth acknowledges that the trial court did not comply with Code § 19.2-160. Nonetheless, because we find no de facto waiver of Kalif-El's right to counsel, we need not address the implication of the trial court's failure to do so.

## II.  Sufficiency of the Evidence

Although we reverse the trial court's decision requiring Kalif-El to proceed *pro se* at trial, we must assess whether the evidence was sufficient to support his convictions; if not, double jeopardy protections bar the Commonwealth from retrying Kalif-El.

"When a reviewing court reverses an appellant's conviction, it must also address the appellant's challenge to the sufficiency of the evidence underlying that conviction 'to ensure that a retrial on remand will not violate double jeopardy principles.'"  *Barney v. Commonwealth*, 73 Va. App. 599, 612 (2021) (quoting *Wilder v. Commonwealth*, 55 Va. App. 579, 594 (2010)), *rev'd on other grounds*, 302 Va. 84 (2023); *see also Grimaldo v. Commonwealth*, 82 Va. App. 304, 319 (2024).  Indeed, "[i]f the evidence adduced at trial was insufficient to convict [Kalif-El], he is entitled to an acquittal" because "a remand for retrial would violate the Constitution's prohibition against double jeopardy."  *Parsons v. Commonwealth*, 32 Va. App. 576, 581 (2000); *see also Burks v. United States*, 437 U.S. 1, 18 (1978) (holding that the "Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient").

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *Grimaldo*, 82 Va. App. at 320 (alteration in original) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).  We do not ask ourselves whether we believe that the trial evidence established guilt beyond a reasonable doubt.  *See Secret v. Commonwealth*, 296 Va. 204, 228 (2018).  Rather, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Kalif-El does not challenge the Commonwealth's proof of any one element of the offenses.  He instead questions the credibility of the complaining witness.  "The sole

responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). This is because the factfinder "has the opportunity to see and hear [the] evidence as it is presented," *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009), whereas this Court "know[s] nothing of the evidence or of the witness, except as it appears on the paper," *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 769, 777 (1839)).

Range testified that Kalif-El, her supervisor, texted her during work that he had paperwork for her. Kalif-El then followed her into the stairwell, asked her to come near him, and grabbed and kissed her without warning or consent. Within 15 minutes, Kalif-El again messaged Range to meet him in a specific office for her performance review. There, Kalif-El closed the door behind Range and forced her to touch his erect penis over his clothing. Range reported both incidents to Forbes who corroborated Range's account of the stairwell incident when she testified that camera footage showed Range and Kalif-El entering the stairwell around the same time. To be sure, the human resources department decided that there was insufficient evidence to fire Kalif-El from the company. But the trial court, after weighing the credibility of the witnesses and deciding the proper weight to give their testimony, accepted Range's testimony, finding it believable and convincing. *See Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000) ("The fact finder, who determines the credibility of the witnesses and the weight accorded their testimony, may accept or reject the testimony in whole or in part."). The trial court's judgment was not plainly wrong or without evidence to support it, and a reasonable factfinder could conclude beyond a reasonable doubt that Kalif-El was guilty of sexual battery and assault and battery.

Therefore, because we find that the evidence was sufficient to sustain Kalif-El's convictions, retrying Kalif-El on remand will not violate double jeopardy principles. "Indeed, '[t]t is a venerable principle of double jeopardy jurisprudence that the successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.'" *Commonwealth v. Bass*, 292 Va. 19, 32 (2016) (alteration in original).

## CONCLUSION

For these reasons, and under the totality of the circumstances of this case, we hold that the trial court erred in requiring Kalif-El to proceed at trial without an attorney. We therefore reverse Kalif-El's convictions and remand for a new trial if the Commonwealth is so inclined.

*Reversed and remanded.*